[Cite as *Jones v. Carrols, L.L.C.*, 2019-Ohio-211.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

ERICK JONES

    Appellant

    v.

CARROLS, LLC, dba BURGER KING, et al.

    Appellees

C.A. No.    28918

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2013-15-5850

DECISION AND JOURNAL ENTRY

Dated: January 23, 2019

TEODOSIO, Judge.

{¶1}    Erick Jones appeals the judgment of the Summit County Court of Common Pleas granting Carrols LLC's second renewed motion to compel arbitration and dismissing the case. We affirm.

I.

{¶2}    This case comes before this Court for the third time, and involves the enforceability of an arbitration agreement relating to Mr. Jones' claims against his former employer, Carrols LLC d/b/a Burger King ("Carrols"), and three of his former supervisors and/or managers (collectively, "Defendants"). We previously set forth the factual background in *Jones v. Carrols, L.L.C.* ("*Jones I*"), 9th Dist. Summit No. 27385, 2015-Ohio-2250, ¶ 2-3:

> In 2004, Mr. Jones began working at a Burger King location owned by Carrols, and he was eventually promoted to shift supervisor and took on certain managerial duties. In July 2006, Carrols implemented a Mandatory Arbitration Policy ("MAP") that required employees to arbitrate nearly all claims associated with their employment. Although Carrols required all new employees to sign a copy of the MAP, it did not require current employees to do so. Instead, Carrols

distributed a memorandum to franchise managers to be disseminated to the employees. The memorandum stated that, by reporting to work on or after August 1, 2006, the employee was agreeing to the MAP. Carrols also required managers to hang a poster containing the MAP in the office.

Mr. Jones was fired in December 2012. On December 16, 2013, Mr. Jones filed a complaint against Defendants, alleging racial and age discrimination, intentional infliction of emotional distress, invasion of privacy, and negligent supervision. Defendants moved to compel arbitration pursuant to the MAP, and Mr. Jones opposed their motion, arguing that he had never agreed to the MAP and had been unaware of its existence.

{¶3} We further set forth the factual background and procedural history of the case in

*Jones v. Carrols, LLC* ("*Jones II*"), 9th Dist. Summit No. 28406, 2017-Ohio-7150, ¶ 2-4:

Mr. Jones also argued that he did not knowingly and voluntarily waive his right to a jury trial, that the terms of the MAP were procedurally and substantively unconscionable, and that the MAP was overly broad and against public policy.

The trial court granted Defendants' motion to compel arbitration, finding that Carrols took "reasonable steps" to inform Mr. Jones of the MAP. It also concluded, without any explanation or analysis, that the MAP was neither procedurally or substantively unconscionable. Mr. Jones appealed the trial court's decision to this Court, raising five assignments of error for our review. We reversed and remanded the matter on the basis that the trial court did not make a determination as to whether Mr. Jones knew about the MAP, noting that "a party cannot assent to a term of which the party is unaware." [*Jones I*] at ¶ 8, 12. We declined to address his remaining assignments of error on the basis that they were not ripe for review. *Id*. at ¶ 13.

On remand, the trial court determined that Mr. Jones did, in fact, have knowledge of the MAP. In doing so, it analyzed the evidence presented at the hearing and applied the applicable law. It also noted that it had previously determined that the MAP was lawful, that it was not unconscionable, and that the subject matter of Mr. Jones' claims fell within its scope. It, therefore, granted Defendants' renewed motion to compel arbitration and dismissed Mr. Jones' complaint.

Mr. Jones appealed a second time to this Court, and again we reversed and remanded to the trial court for further analysis by the trial court. *Jones II* at ¶ 8.

{¶4} Upon remand, the trial court granted Defendants' second renewed motion to compel arbitration and dismissed the case, concluding that: (1) the MAP was neither

substantively nor procedurally unconscionable; (2) the MAP was not against public policy; (3) the MAP was valid and enforceable under Ohio law; (4) Mr. Jones' claims fell within the scope of the MAP; and (5) Mr. Jones waived his right to a jury trial by agreeing to be bound by the MAP. Mr. Jones now appeals, raising five assignments of error.

## II.

### ASSIGNMENT OF ERROR ONE

THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE CASE BECAUSE THE ARBITRATION AGREEMENT IS UNCONSCIONABLE.

{¶5} In his first assignment of error, Mr. Jones argues the trial court erred in granting the motion to compel arbitration because the arbitration agreement was both procedurally and substantively unconscionable. We disagree.

{¶6} "The issue of unconscionability is a question of law." *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, ¶ 12 (9th Dist.). When an appellate court is presented with purely legal questions, the standard of review to be applied is de novo. *Akron-Canton Waste Oil, Inc. v. Safety-Kleen Oil Servs., Inc.*, 81 Ohio App.3d 591, 602 (9th Dist.1992).

{¶7} "Ohio's public policy encourages arbitration as a method to settle disputes." *Eagle* at ¶ 14. "Additionally, a presumption arises favoring arbitration when the claim in dispute falls within the scope of the arbitration provision." *Id.* A court should therefore give effect to an arbitration provision in a contract unless the subject arbitration clause is not susceptible to an interpretation that covers the asserted dispute. *Id.*

{¶8} Although some contracts may ostensibly provide for arbitration, an unconscionable provision is unenforceable. *Lavelle v. Henderson*, 9th Dist. Summit No. 27921,

2016-Ohio-5313, ¶ 9. "Unconscionability consists of two separate concepts: (1) unfair and unreasonable contract terms, i.e., substantive unconscionability; and (2) 'an absence of meaningful choice on the part of one of the parties[,]' i.e., procedural unconscionability." *Id.*, quoting *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 34. "A party seeking to invalidate an arbitration clause on grounds of unconscionability must establish that the provision is both procedurally and substantively unconscionable." *Ball v. Ohio State Home Servs.*, 168 Ohio App.3d 622, 2006-Ohio-4464, ¶ 6 (9th Dist.).

{¶9} "Procedural unconscionability concerns the formation of the agreement, and occurs where no voluntary meeting of the minds was possible." *Porpora v. Gatliff Bldg. Co.*, 160 Ohio App.3d 843, 2005-Ohio-2410, ¶ 7 (9th Dist.). When determining procedural unconscionability, a reviewing court considers "factors bearing on the relative bargaining position of the parties, including age, education, intelligence, business acumen, experience in similar transactions, whether the terms were explained to the weaker party, and who drafted the contract." *Eagle* at ¶ 31. Generally, no one factor alone determines whether a contract is procedurally unconscionable. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, ¶ 29. Instead, a court must consider the totality of the circumstances. *Id.* at ¶ 30.

{¶10} "Substantive unconscionability encompasses those factors which concern the contract terms themselves, and the issue of whether these terms are commercially reasonable." *Eagle* at ¶ 31. "Contract terms are unconscionable if they are unfair and commercially unreasonable." *Porpora* at ¶ 8. "Arbitration clauses are unconscionable where the 'clauses involved are so one-sided as to oppress or unfairly surprise [a] party.'" *Eagle* at ¶ 32, quoting *Neubrander v. Dean Witter Reynolds, Inc.*, 81 Ohio App.3d 308, 311-12 (9th Dist.1992), quoting Black's Law Dictionary 1367 (5th Ed.Rev.1979). "[A]n unconscionable arbitration clause exists

'[when with respect to the arbitration clause itself] one party has been misled as to the "basis of the bargain," where a severe imbalance in bargaining power exists, or where specific contractual terms are outrageous.'" *Id.*, quoting *Orlett v. Suburban Propane*, 54 Ohio App.3d 127, 129 (12th Dist.1989).

**{¶11}** Mr. Jones makes a number of arguments with regard to substantive unconscionability. He first contends that the agreement is overbroad because arbitration "would be resolving disputes unrelated to employment." "To determine whether the claims asserted in the complaint fall within the scope of an arbitration clause, the [c]ourt must 'classify the particular clause as either broad or narrow.'" *Academy of Medicine v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, ¶ 18, quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir.2001). "An arbitration clause that contains the phrase 'any claim or controversy arising out of or relating to the agreement' is considered 'the paradigm of a broad clause.'" *Id.*, quoting *Collins & Aikman Prods. Co. v. Bldg. Sys. Inc.*, 58 F.3d 16, 20 (2d Cir.1995). While it is well-established that such language constitutes a broad clause, Mr. Jones offers no authority for his theory that such language should be construed as overbroad.

**{¶12}** Mr. Jones next argues that the agreement "incorporates terms that are so unfair to one party the enforcement would be unreasonable." In support of this theory, Mr. Jones points to the language of the agreement stating that claims subject to arbitration include "personal or emotional injury to you or your family * * *." Mr. Jones contends such language means that his wife or minor child would have to arbitrate any claims they had against Carrols. The agreement, however, is only between Carrols and Mr. Jones, and as such, no language in the agreement can bind other parties to arbitrate. Likewise, there is no other signatory to the agreement. This language would only be enforceable to the extent that Mr. Jones could bring a claim for his own

damages that were a result of an underlying injury to a family member. The language is also not given in isolation, but in the context of an agreement that, as a whole, references only the obligations of the employee and Carrols. To construe this language as Mr. Jones proposes, i.e., that it would be binding upon third-party family members, would not simply be unreasonable, but unenforceable.

{¶13} Mr. Jones further argues that the terms of the arbitration agreement are unfair and one-sided. In support of this argument, Mr. Jones points to the language of the agreement stating: "You also understand that the parties reserve the right to go to court if they are faced with the risk of irreparable harm, such as the disclosure of confidential information." Mr. Jones contends this language exempts claims more likely to be brought by Carrols, and is therefore unbalanced.

{¶14} In support of his argument, Mr. Jones directs us to *Post v. Procare Automotive Serv. Solutions*, 8th Dist. Cuyahoga No. 87646, 2007-Ohio-2106, contending that his agreement is of the same one-sided variety found to be unconscionable in *Post*. The provision at issue in *Post*, however, is substantially different than the provision in the agreement between Mr. Jones and Carrols. In *Post*, the provision states that nothing in the arbitration agreement at issue "shall be construed so as to deny Employer's right and power to seek and obtain injunctive relief in a court of equity for any breach or threatened breach of Employee of any of his covenants * * *." *Id*. at ¶ 4. Unlike the provision in the MAP, the *Post* provision only creates an exception for the employer, and not for the employee, and it is thus inherently one-sided. The provision in the MAP applies equally to both Mr. Jones and Carrols, and although Mr. Jones states that the employer is more likely to bring a claim of the variety exempted, he offers no evidence that Carrols is more likely to face irreparable harm than he himself.

**{¶15}** Mr. Jones next argues that the terms of the arbitration agreement are misleading and ambiguous. Specifically, he contends that a MAP poster was ambiguous and misleading in stating "[a]rbitration is similar to a lawsuit" and that "it is quicker and less expensive for both sides." Mr. Jones directs us to *Olah v. Ganley Chevrolet, Inc.*, where the Eighth District Court of Appeal examined language in an arbitration agreement which provided: "ARBITRATION PROCEDURES ARE *SIMPLER AND MORE LIMITED* THAN RULES APPLICABLE IN COURT." (Emphasis sic.) 8th Dist. Cuyahoga No. 86132, 2006-Ohio-694, ¶ 20. The Eighth District found the language to be ambiguous, and it was one of several factors that led the court to conclude that the arbitration agreement was substantively unconscionable.

**{¶16}** With regard to the MAP poster, such a simplified description of the arbitration process is incomplete by nature of its brevity and broad generalities. Importantly, however, the language that Mr. Jones refers to from the poster was not part of the arbitration agreement itself. Therefore it does not lend itself to making the actual agreement ambiguous and misleading. Mr. Jones also notes other language from promotional materials that he believes is misleading; however, once again, because the language is not from the agreement itself, we cannot conclude that such language makes the actual agreement substantively unconscionable.

**{¶17}** Mr. Jones further argues the language used in the employee handbook to describe the MAP is ambiguous, namely the statement that "a formal grievance procedure is available for you whenever you wish. An Arbitration procedure is also available. Carrols urges you to take advantage of either procedure if the need arises." Mr. Jones contends that this language is ambiguous because it is "permissive not imperative suggesting the employee has the option of requesting arbitration rather than going to court." We find no ambiguity in these statements, nor are they part of the agreement itself.

{¶18} Mr. Jones next directs us to a MAP memorandum that states "Under MAP, employment related disputes that cannot be resolved internally will proceed to arbitration rather than in a lawsuit." He argues this language is problematic because the MAP itself provides that employees "are not required to use [the in-house grievance procedure] program * * *." We do not find this language to be ambiguous or misleading.

{¶19} Mr. Jones argues that the potential costs of arbitration render the agreement unconscionable; however he fails to provide any evidence of those costs. Mr. Jones also states that the MAP refers the employee to the JAMS website to ascertain the costs of arbitration, but does not provide a rationale as to why this would make the arbitration clause substantively unconscionable.

{¶20} Finally, Mr. Jones argues the agreement does not "provide for the efficiency and judicial economy demanded of arbitration * * *." He bases this argument on the fact that he filed his lawsuit four years ago, that it has involved many hours of judicial and attorney time, and has incurred thousands of dollars in fees. He contends that he could be forced to arbitrate some of his claims while at the same time litigating other claims. None of these facts, however, are evidence of the substantive unconscionability of the terms of the agreement. Moreover, Mr. Jones initiated these proceedings, and inherent in the litigation process is a risk that more time and money will be expended than one had anticipated. We also fail to see how the arbitration process can be disparaged as being inefficient and uneconomical when arbitration has not yet been initiated.

{¶21} We conclude that Mr. Jones has failed to meet his burden of proving that the arbitration agreement was substantively unconscionable. As we have noted, "[a] party seeking to invalidate an arbitration clause on grounds of unconscionability must establish that the provision

is both procedurally and substantively unconscionable." *Ball* at ¶ 6. Having determined that Mr. Jones has failed to establish the substantive unconscionability of the arbitration agreement, we decline to further examine whether the agreement is procedurally unconscionable.

{¶22} Mr. Jones' first assignment of error is overruled.

ASSIGNMENT OF ERROR TWO

THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE CASE BECAUSE THE ARBITRATION AGREEMENT IS AGAINST PUBLIC POLICY.

{¶23} In his second assignment of error, Mr. Jones argues the trial court erred in granting the motion to compel arbitration because the agreement was against public policy due to the fact that it contained a waiver of actions brought on a "class or aggregate basis." We disagree.

{¶24} "A refusal to enforce a contract on the grounds of public policy may be distinguished from a finding of unconscionability. Rather than focus on the relationship between the parties and the effect of the agreement upon them, public policy analysis requires the court to consider the impact of such arrangements upon society as a whole." *Eagle v. Fred Martin Motor Co.*, 157 Ohio App.3d 150, 2004-Ohio-829, ¶ 63 (9th Dist.). "A contract injurious to the interests of the state will not be enforced." *Id.*, citing *King v. King*, 63 Ohio St. 363, 372 (1900). However, "[a]greements voluntarily and fairly made between competent persons are usually valid and enforceable, and the principle that agreements opposed to public policy are not enforceable should be applied cautiously and only in circumstances patently within the reasons on which that doctrine rests." *Gugle v. Loeser*, 143 Ohio St. 362 (1944), paragraph one of the syllabus.

{¶25}  The arbitration agreement provides: "[t]o the extent permitted by the [JAMS] Procedural Standards, you agree that any action you bring shall be on an individual and not class or aggregate basis and that you must join all known claims together in one arbitration."  Mr. Jones contends that such a waiver of class actions is against public policy because it violates the Fair Labor Standards Act and the National Labor Relations Act ("NLRA"), and directs us to *Eagle v. Fred Martin Motor Co.* in support of his argument.

{¶26}  We first note that our decision in *Eagle* is distinguishable.  In *Eagle*, we found an arbitration clause that eliminated a consumer's ability to proceed through a class action invaded the policy considerations of the Consumer Sales Practices Act and was therefore against public policy.  *Eagle* at ¶ 63.  The case currently before us for review is not a consumer action and does not implicate the Consumer Sales Practices Act.

{¶27}  Mr. Jones also directs us to *Lewis v. Epic Sys. Corp.*, 823 F.3d 1147 (7th Cir.2016), and *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir.2016), both being cases that focused upon arbitration agreements containing provisions whereby employees waived the right to pursue a concerted, or collective, action.  Both cases determined that such a provision violated the NLRA.  However, during the pendency of this appeal, the Supreme Court of the United States issued its decision in *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612 (May 21, 2018), which reversed the 7th and 9th Circuits' decisions in *Lewis* and *Morris*.  The Supreme Court held that arbitration agreements requiring individualized arbitration instead of class or collective proceedings did not violate the NLRA, but rather, that the Arbitration Act required enforcement of the agreements.  *Id*. at 1616.  We therefore conclude that the arbitration agreement's requirement that claims shall be on an individual and not class or aggregate basis does not violate public policy.

{¶28} Mr. Jones' second assignment of error is overruled.

ASSIGNMENT OF ERROR THREE

THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE CASE BECAUSE THE MAP PROGRAM DID NOT CREATE A VALID ENFORECEABLE ARBITRATION AGREEMENT UNDER OHIO LAW.

{¶29} In his third assignment of error, Mr. Jones argues the trial court erred in granting the motion to compel arbitration because the arbitration agreement was not supported by adequate consideration and was an illusory contract. We disagree.

{¶30} Mr. Jones argues that at the time he was hired by Carrols in 2005, an arbitration agreement was in effect, and that an employee's assent to arbitration was indicated by an employee's signature on the agreement. Mr. Jones states that he did not agree to the arbitration agreement and did not sign such an agreement. He further states that during his employment, Carrols made material changes to the terms of the arbitration agreement, with assent to the agreement being construed from an employee choosing to continue to work for Carrols after August 1, 2006. Mr. Jones contends there was no consideration for this new arbitration agreement.

{¶31} We will assume the accuracy of Mr. Jones' recitation of facts, solely for the purposes of considering his argument (and with the understanding that Carrols disputes their accuracy). As such, Mr. Jones contends he had not entered into an arbitration agreement at the time of his hiring by Carrols. By continuing to work for Carrols after the August 1, 2006, deadline, Mr. Jones would have assented to an arbitration agreement with Carrols for the first time.

{¶32} "The Ohio Supreme Court has held that giving up a right to trial, in addition to the corresponding rights of that judicial process, is consideration." *Skerlec v. Ganley Chevrolet,*

*Inc.*, 8th Dist. Cuyahoga No. 98247, 2012-Ohio-5748, ¶ 9, citing *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, ¶ 42-43. "No consideration is required above and beyond the mutual agreement to arbitrate." *Id.* at ¶ 13, citing *Corl v. Thomas & King*, 10th Dist. Franklin No. 05AP-1128, 2006-Ohio-2956, ¶ 20, citing *Dantz v. Apple Ohio LLC*, 277 F.Supp.2d 794 (N.D.Ohio 2003). The arbitration agreement under review specifically provided that both Mr. Jones, as the employee, and Carrols both agreed to arbitrate all disputes arising out of or relating to his employment. Because Carrols agreed to be bound by the agreement and give up its right to trial, consideration was given.

{¶33} Mr. Jones also argues that the arbitration agreement was unenforceable because it was an illusory contract. An arbitration agreement that permits an employer to unilaterally amend or terminate an arbitration agreement without notice renders the agreement illusory. *Redmond v. Big Sandy Furniture, Inc.*, 4th Dist. Lawrence No. 08CA12, 2008-Ohio-6084, ¶ 14. Mr. Jones directs us to language in the arbitration agreement that provides:

> Carrols also provides an in-house grievance procedure explained to you during your orientation. Carrols encourages employees to use that program to resolve disputes. While Carrols reserves the right to change, alter, or eliminate that program, and you are not required to use that program, Carrols believes that the in-house grievance procedure is an effective means of resolving disputes.

This language, however, does not apply to the arbitration agreement itself, nor does the arbitration agreement otherwise provide for the unilateral amendment or termination of the agreement without notice.

{¶34} Mr. Jones further directs us to language in the employee handbook that states that Carrols "reserves the right to change, delete or add any of the provisions at its sole discretion." This language does not reference the arbitration agreement, and Mr. Jones has provided us with no evidence that it would apply to the arbitration agreement entered into on August 1, 2006. Mr.

Jones also points to language in the JAMS rules that provides that they may amend their rules without notice. This is not language that alters the arbitration agreement itself and does not provide for unilateral change to the agreement by Carrols. We therefore conclude that Mr. Jones has failed to show that the arbitration agreement was an illusory contract.

**{¶35}** Mr. Jones' third assignment of error is overruled.

ASSIGNMENT OF ERROR FOUR

THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE CASE BECAUSE ERICK JONES' CLAIMS DO NOT FALL WITHIN THE SCOPE OF THE ARBITRATION AGREEMENT.

**{¶36}** In his fourth assignment of error, Mr. Jones argues the trial court erred in granting the motion to compel arbitration because his claims for defamation, false light invasion of privacy, and intentional infliction of emotional distress occurred after he was terminated and are not subject to arbitration. Mr. Jones further argues that his claim alleging a violation of Article II, Chapter 34, of the Ohio Constitution is not subject to arbitration. We disagree.

**{¶37}** "The question of whether an arbitration provision is applicable presents a matter of contract interpretation." *Varga v. Drees Co.*, 9th Dist. Lorain No. 13CA010385, 2014-Ohio-643, ¶ 6. Thus, "[t]he arbitrability of a claim is a question of law, and we review the arbitrability of a claim de novo." *Murray v. David Moore Builders, Inc.*, 177 Ohio App.3d 62, 2008-Ohio-2960, ¶ 7 (9th Dist.), quoting *McManus v. Eicher*, 2d Dist. Greene No. 2003-CA-30, 2003-Ohio-6669, ¶ 11. "[A]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Biondi v. Oregon Homes, LLC*, 9th Dist. Summit No. 26543, 2013-Ohio-1770, ¶ 9, quoting *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108

Ohio St.3d 185, 2006-Ohio-657, ¶ 14. "[A] party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." *Id.*

{¶38} The arbitration agreement provides:

Under this arbitration program, which is mandatory, Carrols and you agree that any and all disputes, claims or controversies for monetary or equitable relief arising out of or relating to your employment, even disputes, claims, or controversies relating to events occurring outside the scope of your employment ("Claims"), shall be arbitrated before JAMS, a national arbitration association, and conducted under the then current JAMS rules on employment arbitration.

There is no provision stating that incidents occurring after termination are inherently unrelated to employment, or that such incidents do not arise out of employment, and Mr. Jones has provided no support for such a theory. Rather, with regard to the individual defendants named in Mr. Jones' complaint, the complaint states that each "at all relevant times was an employee of Defendant Carrols acting within the scope of [his/her] employment." Consequently, Mr. Jones' contention that the claims against the defendants may be stated without reference to the employment relationship is without merit. Likewise, all facts stated in the complaint in support of Mr. Jones' claims arise out of his employment with Carrols, including his termination from employment and subsequent application for unemployment compensation. We conclude that Mr. Jones' has failed to prove that any of his claims fall outside of the scope of the arbitration agreement.

{¶39} Mr. Jones further argues that claims for intentional torts are not subject to an arbitration agreement. In support of this argument, Mr. Jones directs us to *Scaglione v. Kraftmaid Cabinetry*, 11th Dist. Geauga No. 2001-G-2364, 2002-Ohio-6917. However, in a merit decision without opinion, the Supreme Court of Ohio vacated *Scaglione*. *Scaglione v. Kraftmaid Cabinetry*, 101 Ohio St.3d 1401, 2003-Ohio-7098. Consequently, *Scaglione* does not exist as persuasive authority, and additionally, the Supreme Court of Ohio's decision implies that

they disagreed with the Eleventh District's rationale. *See Robbins v. Country Club Ret. Ctr. IV, Inc.*, 7th Dist. Belmont No. 04 BE 43, 2005-Ohio-1338, ¶ 50.

{¶40} Mr. Jones also argues that his claim alleging a violation of Article II, Chapter 34, of the Ohio Constitution is not a statutory claim, and is not subject to arbitration because constitutional claims "are not specifically mentioned in the arbitration agreement and thus are not covered by the agreement." Count VII of Mr. Jones' complaint is captioned as "VIOLATION OF ARTICLE II, SECTION 34(a) [sic] OF THE OHIO CONSTITUTION AND [R.C.] 4111.14, et. [sic] seq." The claim specifically alleges that "[o]n or about October 31, 2013, [Mr. Jones] sent to Defendant Carrols a letter requesting information and documents that his employer was required to maintain pursuant to Article II, [S]ection 34(a) [sic] of the Ohio Constitution and the implementing statute, [R.C.] 4111.14 et. [sic] seq." and that "Carrols never provided the requested information or documents."

{¶41} "In November 2006, Ohio voters approved the Fair Minimum Wage Amendment to the Ohio Constitution, which establishes a minimum rate that employers must pay their employees and requires annual adjustments of that amount." *Haight v. Minchak*, 146 Ohio St.3d 481, 2016-Ohio-10653, ¶ 6. "Shortly after, the General Assembly enacted Am.Sub.H.B. No. 690 ('H.B. 690'), 151 Ohio Laws, Part V, 9576, to implement the provisions of Article II, Section 34a." *Id.* The synopsis for H.B. 690 states that it is an act to "amend sections 4111.01, 4111.02, 4111.03, 4111.04, 4111.08, 4111.09, and 4111.10 and to enact section 4111.14 of the Revised Code to implement Section 34a, Article II, of the Constitution of the State of Ohio and to further amend section 4111.08 of the Revised Code on January 1, 2010, to apply certain record-keeping provisions only to employers subject to Ohio's overtime law."

**{¶42}** "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." *Weiss v. Voice/Fax Corp.*, 94 Ohio App.3d 309, 313 (1st Dist.1994), quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985). In pertinent part, the arbitration agreement provides: "Claims subject to arbitration shall include, without limitation, disputes, claims, or controversies relating or referring in any manner, directly or indirectly, to * * * the Federal Fair Labor Standards Act or similar state statutes * * *." While the language of the agreement may not specifically refer to claims falling under Section 34a of the Ohio Constitution, the agreement does anticipate claims brought under state statutes similar to the Federal Fair Labor Standards Act. The purpose of the Ohio Fair Minimum Wage Amendment, implemented by statute under R.C. 4111.14, is to:

> (1) Ensure that Ohio employees, as defined in division (B)(1) of this section, are paid the wage rate required by Section 34a of Article II, Ohio Constitution;
>
> (2) Ensure that covered Ohio employers maintain certain records that are directly related to the enforcement of the wage rate requirements in Section 34a of Article II, Ohio Constitution;
>
> (3) Ensure that Ohio employees who are paid the wage rate required by Section 34a of Article II, Ohio Constitution may enforce their right to receive that wage rate in the manner set forth in Section 34a of Article II, Ohio Constitution; and
>
> (4) Protect the privacy of Ohio employees' pay and personal information specified in Section 34a of Article II, Ohio Constitution by restricting an employee's access, and access by a person acting on behalf of that employee, to the employee's own pay and personal information.

R.C. 4111.14(A). The statute goes on to provide:

> In accordance with Section 34a of Article II, Ohio Constitution, the terms "employer," "employee," "employ," "person," and "independent contractor" have the same meanings as in the "Fair Labor Standards Act of 1938," 52 Stat. 1060, 29 U.S.C. 203, as amended. In construing the meaning of these terms, due consideration and great weight shall be given to the United States department of

labor's and federal courts' interpretations of those terms under the Fair Labor Standards Act and its regulations.

R.C. 4111.14(B).

This reference to the Fair Labor Standards Act highlights the similar purposes of the two acts, with both providing for a minimum wage (R.C. 4111.02 and 29 USCS 206); overtime pay (R.C. 4111.03 and 29 USCS 207); and record keeping requirements (R.C. 4111.08 and 29 USCS 211(c)).  We therefore conclude that Mr. Jones' claim brought pursuant to Article II, Section 34a of the Ohio Constitution and R.C. 4111.14 et seq. is subject to arbitration.

**{¶43}**  Mr. Jones' fourth assignment of error is overruled.

ASSIGNMENT OF ERROR FIVE

THE TRIAL COURT ERRED IN GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THE CASE BECAUSE ERICK JONES NEVER WAIVED HIS CONSTITUTIONAL RIGHT TO A JURY TRIAL ON HIS LEGAL CLAIM.

**{¶44}**  In his fifth assignment of error, Mr. Jones argues the trial court erred in granting the motion to compel arbitration because he had never waived his right to a jury trial.  We disagree.

**{¶45}**  "The waiver of the right to a jury trial is a necessary consequence of agreeing to arbitration and is not unconscionable."  *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, ¶ 43.  Having already concluded the arbitration agreement was not unconscionable nor otherwise unenforceable, and that Mr. Jones was bound by the agreement, we find no merit in this argument.

**{¶46}**  Mr. Jones' fifth assignment of error is overruled.

III.

**{¶47}** Mr. Jones' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

SCHAFER, P. J.
CONCURS.

CARR, J.
DISSENTING.

{¶48} I respectfully dissent from the judgment of the majority. I would sustain the first assignment of error as I would conclude that the arbitration agreement is procedurally and substantively unconscionable.

{¶49} "Procedural unconscionability considers the circumstances surrounding the contracting parties' bargaining, such as the parties' age, education, intelligence, business acumen and experience, * * * who drafted the contract, * * * whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question." (Internal quotations and citations omitted.) *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 44. Here, undoubtedly, there was a disparity in the bargaining power between the parties. Carrols drafted the arbitration agreement and was a large entity with thousands of employees. Mr. Jones was a high school graduate who was supporting a family, did not understand arbitration, and whose only option to maintain his employment was to agree to the arbitration agreement. Thus, his situation was not like that of a potential employee looking for a job who could simply apply somewhere else. Mr. Jones would have to leave a job he already had and then search for a new one if he were to object to the arbitration agreement. Thus, I would determine that the arbitration agreement was procedurally unconscionable.

{¶50} "Substantive unconscionability encompasses those factors that concern the contract terms themselves[.] Contract terms are [substantively] unconscionable if they are unfair and commercially unreasonable." (Internal quotations and citation omitted.) *First Natl. Bank of Pennsylvania v. Nader*, 9th Dist. Medina No. 16CA0004-M, 2017-Ohio-1482, ¶ 32. Here, the arbitration agreement required that Mr. Jones arbitrate "any and all disputes, claims or controversies for monetary or equitable relief arising out of or relating to [his] employment, even

disputes, claims or controversies relating to events occurring outside the scope of [his] employment[.]" Those claims included "disputes, claims or controversies relating or referring in any manner, directly or indirectly to: * * * personal or emotional injury to [him] or [his] family[.]" Thus, it seems Carrols was requiring that Mr. Jones arbitrate far more than disputes relating to his employment.

**{¶51}** The arbitration agreement also states that the claims "shall be arbitrated before JAMS, a national arbitration association, and conducted under the then current JAMS rules on employment arbitration." However, the copy of those rules presented by Carrols, which notably are effective as of July 15, 2009, state that "JAMS may amend these Rules without notice. The Rules in effect on the date of the commencement of an Arbitration (as defined in Rule 5) shall apply to that Arbitration, unless the Parties have agreed upon another version of the Rules." Those rules include, inter alia, provisions about how to commence arbitration, arbitrator selection and replacement, scheduling and location of the hearing, awards, and fees. Accordingly, it would seem impossible for Mr. Jones to know what rules would apply to him given that there would be no way to know in advance what rules would be in effect when arbitration was finally sought. *See Arnold v. Burger King*, 8th Dist. Cuyahoga No. 101465, 2015-Ohio-4485, ¶ 97.

**{¶52}** However, not only would Mr. Jones need to refer to the above mentioned rules to understand what he was agreeing to in the arbitration agreement, he would also have to refer to the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness, which, according to the arbitration agreement, Carrols "will satisfy[.]" The copy of that policy presented by Carrols, and also effective July 15, 2009, states that "[a]ll remedies that would be available under the applicable law in a court proceeding * * * must remain available in the

arbitration[]" however, the arbitration agreement itself states that "[t]he arbitrator * * * will limit your relief to compensation for demonstrated and actual injury to the extent consistent with the [policy]."  Overall, the terms of the arbitration agreement are confusing and require one to examine multiple documents, at least one of which was subject to change without notice.  Thus, I would likewise determine the arbitration agreement was substantively unconscionable as well.

{¶53}  Given the foregoing, I would sustain Mr. Jones' first assignment of error.

APPEARANCES:

ROBERT E. KERPER, JR., Attorney at Law, for Appellant.

CARL H. GLUEK, Attorney at Law, for Appellees.

JEFFREY J. MAYER, Attorney at Law, for Appellees.