[Cite as *Thomas v. Hyundai of Bedford*, 2020-Ohio-185.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

SHANNON THOMAS,                          :

    Plaintiff-Appellant,          :

                                                  No. 108212

    v.                            :

HYUNDAI OF BEDFORD, ET AL.               :

    Defendants-Appellees.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** January 23, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-903250

---

***Appearances:***

Friedman & Associates, and Avery Friedman; Klebanow
Law, L.L.C., and Jared S. Klebanow, *for appellant*.

Zashin & Rich Co., L.P.A., Stephen S. Zashin, and David P.
Frantz, *for appellees*.

KATHLEEN ANN KEOUGH, J.:

{¶ 1}   Plaintiff-appellant, Shannon Thomas ("Thomas"), appeals from the trial court's judgment that granted the motion of defendants-appellees, Migdal 1, L.L.C., d.b.a. Hyundai of Bedford, Joe Delguidice, and Kyle Pisani ("appellees"), to stay proceedings pending arbitration.  We reverse and remand.

## I.  Background

{¶ 2}  On December 15, 2017, Thomas signed an arbitration agreement with his then-employer, Migdal 1, L.L.C.  The arbitration agreement provided that

> [a]s the exclusive means of initiating adversarial proceedings to resolve any Covered Dispute, and pursuant to the Federal Arbitration Act (9 U.S.C. §1, either Migdal or Employee may demand that the dispute be resolved by final and binding arbitration using the procedures described in this Agreement, and each party hereby consents to all Covered Disputes being so resolved.

{¶ 3}  The agreement defined "Covered Disputes" as

> any actual or alleged claim or liability, *regardless of its nature*, that Migdal or its owners, managers, members, officers, employees, agents, or insurers may wish to bring against Employee, or that Employee may wish to bring against Migdal or any of Migdal's owners, managers, members, officers, employees, agents, or insurers.

(Emphasis added.)  The agreement excluded from consideration as a "Covered Dispute" any claim by an employee for unemployment compensation or workers' compensation benefits, any claim relating to a violation of the National Labor Relations Act, or any other claim that under law cannot be the subject of a pre-dispute arbitration agreement.

{¶ 4}  The agreement provided that in any arbitration conducted pursuant to the agreement, either Migdal or the employee "may seek and recover any amount or type of damages or other legal or equitable relief that could have been recovered had the action been brought in a court."  The agreement further provided that the arbitrator's award would be "final and binding forever" on both the employee and Migdal, and neither Migdal nor the employee could appeal the arbitrator's decision.

{¶ 5} In September 2018, Thomas filed a two-count complaint against Migdal, Pisani, and Delguidice. Thomas's complaint asserted claims for race discrimination (Count 1) and retaliation (Count 2) under Ohio Revised Code Chapter 4112. Count 1 alleged that Thomas was discriminated against on the basis of his race while he was employed by Migdal,[1] and Count 2 alleged that Migdal, Pisani, and Delguidice retaliated against Thomas by demoting him and not paying him in the same manner as white employees when he complained about the discrimination.

{¶ 6} Appellees answered the complaint and then filed a motion to stay proceedings pending arbitration and for costs and sanctions. Thomas filed a brief opposing the motion. The trial court subsequently granted the motion to stay proceedings pending arbitration and denied the motion for costs and sanctions. This appeal followed.

## II. Law and Analysis

{¶ 7} In his sole assignment of error, Thomas contends that the trial court erred in granting appellees' motion to stay proceedings pending arbitration. He asserts that he cannot be compelled to arbitrate his discrimination and retaliation

---

[1] Thomas, an African-American male, alleged in his complaint that employees regularly used the "n-word" around him; one employee used a water balloon to act as if he were spraying urine on Thomas; Thomas was paid half the pay of white managers; Thomas's pay was reduced even though white managers' pay remained the same; white managers were allowed to take a car from the lot home at night but Thomas was not afforded the same privilege; white employees were paid a revenue bonus but Thomas was not; management took no action when an employee told Thomas "I don't fight n---ers, I kill them"; and management did not discipline the same employee when he brought a gun to work and was overheard threatening to shoot Thomas.

claims because Ohio's public policy commitment to challenging racial bias in the workplace, as codified in R.C. Chapter 4112, "is so strong * * * that it permits direct access to the courts without any administrative prerequisite." (Appellant's Brief, p. 10). He further contends that the arbitration agreement cannot be enforced because it is unconscionable.

{¶ 8} This court reviews a trial court's decision to grant a motion to stay litigation pending arbitration for an abuse of discretion. *Avery v. Acad. Invest., L.L.C.*, 8th Dist. Cuyahoga No. 107550, 2019-Ohio-3509, ¶ 9.

{¶ 9} Ohio courts recognize a presumption favoring arbitration that arises when the claim in dispute falls within the scope of the arbitration provision. *Wallace v. Ganley Auto Group*, 8th Dist. Cuyahoga No. 95081, 2011-Ohio-2909, ¶ 13. Indeed, Ohio law requires a stay of proceedings when an arbitrable dispute has been improperly brought before a court. *See, e.g., McGuffey v. LensCrafters, Inc.*, 141 Ohio App.3d 44, 50, 749 N.E.2d 825 (12th Dist.2001) (noting that a trial court "shall" stay proceedings pending arbitration once it is satisfied that an issue is arbitrable); *Sasaki v. McKinnon*, 124 Ohio App.3d 613, 618, 707 N.E.2d 9 (8th Dist.1997) ("The Ohio Arbitration Act, which strongly favors arbitration, compels the court to review the arbitration clause at issue and, if the court is satisfied that the dispute or claim is covered by the arbitration clause, give effect to the clause and stay the proceedings pursuant to R.C. 2711.02."). In light of this strong presumption favoring arbitration, any doubts regarding arbitration should be resolved in its favor.

*Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶ 18.

{¶ 10} Nevertheless, Thomas asserts that he should not be compelled to arbitrate his race discrimination and retaliation claims. As support for his argument, Thomas first directs us to Justice Ruth Bader Ginsburg's dissent in *Epic Sys. Corp. v. Lewis*, 584 U.S. ___, 138 S.Ct. 1612, 200 L.Ed.2d 889 (2018), wherein Justice Ginsburg stated:

> It would be grossly exorbitant to read the FAA [Federal Arbitration Act] to devastate Title VII of the Civil Rights Act of 1964 * * * and other laws enacted to eliminate, root and branch, class-based employment discrimination * * *. With fidelity to the Legislature's will, the Court could hardly hold otherwise.

*Id.* at 1648. Thomas suggests that this statement by Justice Ginsburg stands for the proposition that after *Epic Sys.*, individual, non-class action claims brought pursuant to R.C. Chapter 4112 are not arbitrable.

{¶ 11} We fail to see any connection between *Epic Systems* and this case. The issue decided in *Epic Systems* was whether the Federal Arbitration Act permits employers to include class-action waivers in arbitration agreements with their employees, even though the National Labor Relations Act allows employees to engage in "concerted activities" for their "mutual aid and protection." *Id.* at 1633. The majority held that class-action waivers in arbitration agreements are enforceable; Justice Ginsburg would have answered the question with a "resounding no." *Id.* As aptly stated in Thomas's brief, "*Epic Systems* had nothing to do with

individual, non-class action cases like Shannon Thomas's case." (Appellant's Brief, p. 9).

{¶ 12} The excerpt Thomas quotes from Justice Ginsburg's dissent does not support his argument that after *Epic Systems*, non-class action discrimination claims are immune from arbitration. To the contrary, reading the paragraph as a whole, it explains Justice Ginsburg's belief that the majority's holding in *Epic Systems* does *not* threaten an individual litigant's ability to pursue disparate impact or pattern-or-practice claims, even though such claims may require proof on a group-wide basis.

{¶ 13} We also find no merit to Thomas's assertion that this is a case of "first impression" after *Epic Systems* involving non-class action claims for workplace discrimination subject to an arbitration agreement. In *Jones v. Carrols, L.L.C.*, 9th Dist. Summit No. 28918, 2019-Ohio-211, Jones argued that the arbitration agreement he had signed requiring him to arbitrate claims against his employer was against public policy because it contained a class-action waiver. The Ninth District disagreed, noting that in *Epic Systems*, the Supreme Court held that arbitration agreements requiring individualized arbitration instead of class or collective proceedings did not violate the National Labor Relations Act, and that the Federal Arbitration Act required enforcement of the agreements. *Id.* at ¶ 27, citing *Epic Systems*, ___ U.S. ___, 138 S.Ct. at 1616, 200 L.Ed.2d 889. Notably, as relevant to Thomas's argument, the Ninth District also rejected Jones's other arguments regarding the enforceability of the arbitration agreement, and held, even after *Epic*

*Systems*, that Jones's individual, non-class action claims for, among other things, racial and age discrimination, were subject to arbitration under the arbitration agreement. *Id.* at ¶ 47.

{¶ 14} Thomas next contends the trial court erred in staying proceedings pending arbitration because there is "Ohio precedent which affords Ohio workers the choice to go to arbitration or to the court of common pleas under O.R.C. Section 4112." (Appellant's Brief, p. 9.) But Thomas's citations to *Thomas v. GE Co.*, 131 Ohio App.3d 825, 723 N.E.2d 1139 (1st Dist.1999), and *Luginbihl v. Milcor L.P.*, 3d Dist. Allen No. 1-01-162, 2002-Ohio-2188, as support for this argument are not on point. Both *Thomas* and *Luginbihl* stand for the proposition that a union cannot, in a collective bargaining agreement, prospectively waive a member's right to select a judicial forum for the resolution of the member's statutory claims, even if the collective bargaining agreement contains a grievance procedure that culminates in binding arbitration. *Thomas* at 831; *Luginbihl* at ¶ 28. That is so because statutory discrimination rights are distinct from contractual collective bargaining rights and are independent of the arbitration process. *Haynes v. Ohio Turnpike Comm.*, 177 Ohio App.3d 1, 2008-Ohio-133, 893 N.E.2d 850, ¶ 17-18 (8th Dist.); *Luginbihl* at ¶ 29. Thus, the employee is not required to proceed to arbitration under the collective bargaining agreement and may proceed in state court with his or her discrimination and retaliation claims. *Thomas* at 831.

{¶ 15} This case does not involve a collective bargaining agreement, however, or a union acting on Thomas's behalf. Instead, it involves an arbitration

agreement that Thomas signed on his own behalf in which he agreed to submit his claims to arbitration. Despite Thomas's failure to so acknowledge, there are numerous cases from Ohio courts holding that an employee's race discrimination and retaliation claims brought pursuant to R.C. Chapter 4112 are arbitrable where the employee has signed an arbitration agreement. *See*, *e.g.*, *Doe v. Contemporary Servs. Corp.*, 8th Dist. Cuyahoga No. 107229, 2019-Ohio-635; *Jones,* 9th Dist. Summit No. 28918, 2019-Ohio-211; *Wolfe v. J.C. Penney Corp.*, 10th Dist. Franklin No. 18AP-70, 2018-Ohio-3881; *Hay v. Summit Funding, Inc.*, 4th Dist. Ross No. 16CA3577, 2017-Ohio-8261; *Rivera v. Rent A Ctr., Inc.*, 8th Dist. Cuyahoga No. 101959, 2015-Ohio-3765; *Melia v. OfficeMax N. Am., Inc.*, 8th Dist. Cuyahoga No. 87249, 2006-Ohio-4765; *Butcher v. Bally Total Fitness Corp.,* 8th Dist. Cuyahoga No. 81593, 2003-Ohio-1734.

{¶ 16} Nevertheless, although arbitration is encouraged as a way to settle disputes, an arbitration clause is not enforceable if it is unconscionable. *Felix v. Ganley Chevrolet, Inc.*, 8th Dist. Cuyahoga Nos. 86990 and 86991, 2006-Ohio-4500, ¶ 15. Questions of unconscionability are reviewed under a de novo standard of review. *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 8. Under a de novo standard, we give no deference to the trial court's decision. *Brownlee v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 97707, 2012-Ohio-2212, ¶ 9.

{¶ 17} Unconscionability includes both an absence of meaningful choice on the part of one of the parties to a contract, together with contract terms that are

unreasonably favorable to the other party. *Hayes v. Oakridge Homes*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 20; *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (2d Dist.1993). It consists of two separate concepts: (1) substantive unconscionability; and (2) procedural unconscionability. *Olah v. Ganley Chevrolet, Inc.*, 8th Dist. Cuyahoga No. 86132, 2006-Ohio-694, ¶ 14.

{¶ 18} Substantive unconscionability goes to the unfairness or unreasonableness of the contractual terms. *Featherstone v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 159 Ohio App.3d 27, 2004-Ohio-5953, 822 N.E.2d 841, ¶ 13 (9th Dist.). When a contractual term is "so one-sided as to oppress or unfairly surprise" a party, the contractual term is said to be substantively unconscionable. *Neubrander v. Dean Witter Reynolds, Inc.,* 81 Ohio App.3d 308, 311-312, 610 N.E.2d 1089 (9th Dist.1992).

{¶ 19} Procedural unconscionability, on the other hand, concerns the formation of the agreement, and occurs when one party has such superior bargaining power that the other party lacks a "meaningful choice" to enter into the contract. *DeVito v. Autos Direct Online, Inc.*, 2015-Ohio-3336, 37 N.E.3d 194, ¶ 19 (8th Dist.), citing *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 33. Courts have also characterized it as a lack of voluntary meeting of the minds due to the circumstances surrounding the execution of the contract. *Collins* at 834. In determining procedural unconscionability, courts should consider factors relating to the bargaining power of each party, "such as age,

education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible." *Id.* Generally, no one factor alone determines whether a contract is procedurally unconscionable. *Hayes* at ¶ 29. Instead, a court must consider the totality of the circumstances. *Id.* at ¶ 30.

{¶ 20} A finding of unconscionability requires both procedural and substantive unconscionability, although procedural and substantive aspects of unconscionability are often integrally related. *DeVito* at ¶ 20. Most cases of unconscionability involve a combination of procedural and substantive unconscionability, and if more of one is present, then less of the other is required. *Id.* "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required." *Id.*, citing 1 E. Allan Farnsworth, *Farnsworth on Contracts*, § 4.28, at 585 (3d Ed.2004).

{¶ 21} Our review of the arbitration agreement demonstrates that it is both substantively and procedurally unconscionable because the agreement, drafted by Migdal, as the employer, requires Thomas, as an employee of Migdal, to arbitrate any claim whatsoever he might have against Migdal, its owners, managers, members, officers, agents, insurers, or other employees, regardless of the nature of the claim. Thus, although the relationship of the parties to the agreement is one of employer and employee, the agreement, by its terms, includes as arbitrable all claims between the parties, even those that are outside the scope of the employment relationship.

{¶ 22} Appellees assert that Thomas's claims are arbitrable because they arise out of his employment relationship with appellees. But the agreement does not specify that it applies only to claims that arise out of the employment relationship; it provides that it encompasses "any actual or alleged claim or liability, regardless of its nature." In *Arnold v. Burger King*, 2015-Ohio-4485, 48 N.E.3d 69 (8th Dist.), this court found substantively unconscionable an arbitration agreement between an employee and employer where the agreement provided that it applied to "any and all disputes, claim or controversies arising out of or relating to [your] employment," as well as "claims or controversies relating to events outside the scope of your employment." *Id.* at ¶ 4. This court reasoned that the agreement was substantively unconscionable because the relationship between the parties was that of employer and employee, but "inasmuch as the [agreement] sought to include every possible situation that might arise in an employee's life, * * * the arbitrator would be resolving disputes unrelated to employment." *Id.* at ¶ 84. We find the same reasoning applicable here.

{¶ 23} We likewise find the arbitration agreement to be procedurally unconscionable. We recognize that in an at-will employment situation, Ohio employers may condition employment on the employee's agreement to arbitrate disputes. *Dacres v. Setjo*, 8th Dist. Cuyahoga No. 107638, 2019-Ohio-2914, ¶ 36; *Overman v. Ganley Ford W., Inc.*, N.D. Ohio No. 1:15 CV 1581, 2015 U.S. Dist. LEXIS 169601, 3-4 (Dec. 17, 2015) (rejecting plaintiff's argument that the arbitration agreement should not be enforced because, among other reasons, "he was forced to

sign the Arbitration Agreement to keep his job"). Thus, Thomas's argument that the agreement is procedurally unconscionable because he had no choice but to sign the agreement in order to keep his job is without merit.[2]

{¶ 24} Nevertheless, an employer may not condition an employee's continued employment on his assent to an arbitration agreement that provides that every conceivable claim the employee may ever have against the employer, even if the claim does not arise out of the employment relationship, must be resolved by arbitration. In such cases, the agreement is necessarily procedurally unconscionable. In its reply to Thomas's brief in opposition to Migdal's motion to stay proceedings pending arbitration, Migdal admitted that Thomas's continued employment was conditioned upon his signing the arbitration agreement. (Reply Brief, p. 7.)

{¶ 25} Even a diligent reading of the "covered disputes" clause would not inform a reasonable reader of its actual effect. The clause does not explain that disputes arising outside the scope of employment — disputes an employee would not reasonably expect to be covered by an arbitration agreement with his employer — must also proceed to arbitration. In *Arnold, supra*, this court found a similar clause to be procedurally unconscionable, reasoning that "[t]he agreement does not,

---

[2] We also reject Thomas's argument that the "final and binding" nature of the arbitration award makes the agreement unconscionable because he would have no ability to appeal if he experienced any bias from the arbitrator. Under this logic, almost all arbitration agreements would be unconscionable, given the ubiquity of agreements that provide for final and binding arbitration.

in any way explain the tremendously overreaching impact of its terms on the employee's life both within and outside the scope of employment." *Arnold*, 2015-Ohio-4485, 48 N.E.3d 69, at ¶ 81. This court stated further, "[o]ne may be willing to arbitrate disputes that arise in the course of employment. It is an entirely different scenario when one agrees to arbitrate claims that arise outside the scope of employment because the variety of potential claims is practically infinite and unforeseeable." *Id.* at ¶ 82.

{¶ 26} Accordingly, because the arbitration agreement at issue is both substantively and procedurally unconscionable, we find that the trial court abused its discretion in granting appellees' motion to stay proceedings pending arbitration. The assignment of error is sustained, and the matter is remanded for further proceedings.

{¶ 27} Reversed and remanded.

It is ordered that appellant recover from appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

KATHLEEN ANN KEOUGH, JUDGE

MARY EILEEN KILBANE, P.J., and
EILEEN A. GALLAGHER, J., CONCUR