[Cite as *Dacres v. Setjo, L.L.C.*, 2019-Ohio-2914.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

EWAN DACRES,                          :

    Plaintiff-Appellant,           :

                                    No. 107638

    v.                             :

SETJO, L.L.C., ET AL.,                :

    Defendants-Appellees.          :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 18, 2019

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-894592

---

***Appearances:***

Joanne Brown, *for appellant.*

Zashin & Rich Co., L.P.A., Stephen S. Zashin, and David P. Frantz, *for appellees.*

ANITA LASTER MAYS, J.:

{¶ 1} Plaintiff-appellant Ewan Dacres ("Dacres") filed suit against his employer, defendant-appellee Setjo, L.L.C. d.b.a. KIA of Bedford ("KIA") advancing multiple counts relating to the employment relationship including discrimination

and wrongful termination. The trial court granted KIA's motion to stay the proceedings pending arbitration. Dacres appeals the determination.[1]

## I. Background and Facts

**{¶ 2}** Dacres filed a complaint for damages and injunctive relief against KIA on March 15, 2018. Jamaican-born Dacres was the only African-American manager employed by KIA. Dacres states that he joined KIA in 2010 and that he performed well and exhibited tireless work ethics but was terminated without warning on August 17, 2017.

**{¶ 3}** Dacres was one of three employees whose signatures were required to approve payments for employee participation in the unit bonus program. Dacres as the sales manager, the general manager, and a KIA owner were each responsible for independently verifying that the employee in question met the program requirements to provide a check-and-balance system. Dacres was summoned to a meeting with KIA management in August 2017 and informed that an employee had been improperly approved and paid for program participation. Dacres, the sole minority, was the only person terminated for the error. His conduct was deemed to be theft but not the conduct of the other signers.

---

[1] A motion granting or denying a stay pending arbitration "is a final order and a trial court lacks authority to reconsider such orders absent a jurisdictional basis." *Tedeschi v. Atrium Ctrs., L.L.C.*, 8th Dist. Cuyahoga No. 97647, 2012-Ohio-2929, ¶ 9. *See also Russell v. RAC Natl. Prod. Serv., L.L.C.*, 4th Dist. Washington No. 14CA17, 2014-Ohio-3392, ¶ 14 (the proceedings set forth in R.C. 2711.02 and 2711.03 are special proceedings under R.C. 2505.01(A)(1), and thus are final appealable orders).

{¶ 4} Dacres also asserted that he was consistently harassed about his race and national origin by managers and coworkers during his employment and was routinely referred to as "boy." According to the complaint, Dacres refused to respond to the moniker "boy" by a named coworker who approached Dacres in front of customers and staff, "violently shoved [Dacres] to the ground while screaming 'f**king boy you work for me.'" Complaint, p. 73. Dacres said there was no adverse action taken against the employee.

{¶ 5} KIA also condoned similar behavior by other employees. The director of finance would, in front of staff and customers, "say [to Dacres] in a loud voice 'boy don't you hear me talking to you.'" *Id.* at p. 77. Coworkers made other stinging comments such as Dacres could accompany them to the golf course to carry their bags, comment "there goes the neighborhood" when he entered a meeting, or called him "Kunte Kinte" because he was required to work 12 to 14 hours per day, six days per week for 16 months while the white managers worked five days per week.

{¶ 6} Dacres cited numerous occasions where African-American employees were called fat and black, hood rats, and ni**ers. There were also comments about Dacres's Jamaican heritage such as whether Jamaicans lived in trees, dirt huts, or speak English.

{¶ 7} In spite of the submission of multiple verbal, written, and email complaints to the owners and general manager, Dacres claimed nothing was done to address the issue. Dacres asserted that his termination was based on his race.

{¶ 8} Dacres claimed discrimination, hostile work environment, and wrongful termination based on race and national origin. R.C. 4112.02(A). Dacres also made claims of intentional infliction of emotional distress and defamation of character based on KIA telling coworkers and potential employers that Dacres stole and misappropriated funds.

{¶ 9} Dacres also charged KIA with fraud. Managers were paid a percentage of a stated line item known as line 6395. Dacres argued that the line item amount used to determine his pay was intentionally misrepresented in order to pay him less than the other managers.

{¶ 10} Finally, Dacres charged KIA with tortious interference of a business relationship. Dacres argued that he had an independent business relationship with KIA Motors because of his membership in the KIA Motor's KIA Sales Elite group. Members received quarterly payments for sales made the prior year except where the individual retires. Dacres said KIA's practice was not to retire managers until their Elite payments had been issued but changed that practice and retired Dacres so he could not collect the payments.

{¶ 11} KIA responded to the complaint on May 18, 2018, and effectively denied the allegations of the complaint. KIA advanced multiple affirmative defenses including that the claims were subject to an enforceable arbitration agreement that could not be pursued in court, and that R.C. 4113.71 applied to provide immunity to an employer for job performance information disclosures.

{¶ 12} Also, on May 18, 2018, KIA moved to stay the proceedings pending arbitration and requested costs and sanctions. KIA argued that all claims of the complaint relate to Dacres's employment and are therefore covered by the arbitration agreement executed by Dacres on November 28, 2016.

{¶ 13} On June 11, 2018, Dacres filed a response to the motion. Dacres argued that the arbitration agreement is unenforceable because there was no meeting of the minds, that the arbitration agreement is procedurally and substantively unconscionable, and that the arbitration agreement is void due to duress. Dacres averred in an affidavit supporting his response that his office manager presented the arbitration agreement to him on November 28, 2016 at 8:00 p.m., refused to give him a copy to have it reviewed by his attorney, informed him that signing was not negotiable, refused to allow him to read the agreement and directed that he sign it or he would not get paid for remuneration already earned. Two weeks later, Dacres was provided with an unsigned copy of the arbitration agreement.

{¶ 14} KIA filed a reply refuting Dacres's claims. KIA added that all employees received handbooks and a copy of the arbitration agreement in November 2016. KIA attached a document signed by Dacres on November 28, 2016 that states Dacres received a handbook, and argued that Dacres received the arbitration agreement prior to November 28, 2016 to review. KIA also provided an affidavit from the office manager averring that employees were provided copies of

the arbitration agreement prior to signing and that employees were not forced to sign. KIA also denied that there was a threat to withhold Dacres's pay.

{¶ 15} No hearing was requested or conducted regarding the motion. The trial court determined that, "even if true," the threat to withhold Dacres's earned wages was "not so extreme as to deprive" Dacres "of his unfettered will, and did not create a situation in which the circumstances permitted no other alternative but to sign the arbitration agreement." Journal Entry Order and Opinion (Aug. 9, 2018), p. 2. "Dacres could have resigned" and sued later if he was not paid. The journal entry also claims that Dacres never complained about his treatment at work. *Id.*

{¶ 16} The trial court determined that procedural unconscionability was lacking because he wrote his name[2] on the first page of the five-page agreement and signed the last page. The court also found that evidence was lacking to show that the "'bargaining process was so oppressive as to remove meaningful choice.'" *Id.* at p. 3, citing *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 29. The trial court further determined that there was no need to address substantive unconscionability because procedural unconscionability had not been established.

{¶ 17} Finally, the trial court disagreed that there was no meeting of the minds. Based on Ohio case law, simply signing the arbitration agreement assumes that the signer read and understood the arbitration agreement and the other party

---

[2] Dacres's name is hand-printed on the blank line preceding "'Employee'" in the introductory paragraph of the arbitration agreement.

should be able to rely on that.  *Id.* at p. 4, citing *Butcher v. Bally Total Fitness Corp.*, 8th Dist. Cuyahoga No. 81593, 2003-Ohio-1734, ¶ 16.

## II.  Assigned Error

{¶ 18} Dacres presents a single assigned error on appeal.

> The court erred in finding as a matter of law that when an employer who is obligated to pay an employee wages due and earned under an employment contract, threatens not to pay the employee unless he or she signs a [second] separate agreement that he or she does not want to sign, the employee has not been coerced and did not sign the second agreement under duress.

## III.  Discussion.

### A.  Standards of Review

{¶ 19}  "Generally, absent an abuse of discretion, a reviewing court should not disturb a trial court's decision regarding a motion to stay proceedings pending arbitration."  *K.M.P., Inc. v. Ohio Historical Soc.*, 4th Dist. Jackson No. 03CA2, 2003-Ohio-4443, ¶ 14, citing *Maclin v. Greens Nursing*, 8th Dist. Cuyahoga No. 101085, 2014-Ohio-2538, ¶ 7.  An abuse of discretion standard "'connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'"  *Id.*, quoting *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 20} The question of whether a party has agreed to submit a specific issue to arbitration is reviewed under a de novo standard.  *Hedeen v. Autos Direct Online, Inc.*, 8th Dist. Cuyahoga No. 100582, 2014-Ohio-4200, 19 N.E.3d 957, ¶ 9, citing *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7; and *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-

938, 884 N.E.2d 12.  Under a de novo standard of review, we give no deference to a trial court's decision.  *Hedeen* at ¶ 9, citing *Brownlee v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 97707, 2012-Ohio-2212, ¶ 9; *Akron v. Frazier*, 142 Ohio App.3d 718, 721, 756 N.E.2d 1258 (9th Dist.2001).

## B.  Analysis

{¶ 21}  In general, Ohio's public policy encourages arbitration as a method to settle disputes.  *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 711-712, 590 N.E.2d 1242 (1992); and the Ohio Arbitration Act, R.C. Chapter 2711 (a trial court, "shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement."  R.C. 2711.02).

{¶ 22}  R.C. 2711.01(A) provides:

> (A) A provision in any written contract, except as provided in division (B) of this section, to settle by arbitration a controversy that subsequently arises out of the contract, or out of the refusal to perform the whole or any part of the contract, or any agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, or arising after the agreement to submit, from a relationship then existing between them or that they simultaneously create, shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.

{¶ 23}  R.C. 2711.02 specifically addresses the trial court's authority to stay a trial pending arbitration:

> As a result of Ohio's pro-arbitration stance, courts indulge a strong presumption in favor of arbitration when the disputed issue falls within the scope of the arbitration agreement.  *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998); *Taylor Bldg.*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 27.  Ohio also holds that arbitration agreements are, "'valid, irrevocable, and enforceable, except

upon grounds that exist at law or in equity for the revocation of any contract.'" *Taylor Bldg.* at ¶ 33, quoting R.C. 2711.01(A).

{¶ 24} The Ohio Supreme Court has steadfastly maintained that, "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit.'" *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 20, quoting *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986*). See also Academy of Med. v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 11-14 (in order for an arbitration agreement to be enforceable, the agreement must apply to the disputed issue), and *Ghanem v. Am. Greetings Corp.*, 8th Dist. Cuyahoga No. 82316, 2003-Ohio-5935, ¶ 12.

{¶ 25} The *Taylor* court explained:

> Accordingly, when deciding motions to compel arbitration, the proper focus is whether the parties actually agreed to arbitrate the issue, i.e., the scope of the arbitration clause, not the general policies of the arbitration statutes. [*EEOC v.*] *Waffle House[, Inc.*], 534 U.S. [279] at 294[, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002)]. It follows that although any ambiguities in the language of a contract containing an arbitration provision should be resolved in favor of arbitration, the courts must not "override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Id.*

*Taylor* at ¶ 20; *Marks v. Morgan Stanley Dean Witter Commercial Fin. Servs.*, 8th Dist. Cuyahoga No. 88948, 2008-Ohio-1820, ¶ 15 ("parties cannot be compelled to arbitrate a dispute in which they have not agreed to submit to arbitration").

**{¶ 26}** In determining arbitrability, a court must be guided by the following analysis:

> "(1) that 'arbitration is a matter of contract and a party cannot be required to so submit to arbitration any dispute which he has not agreed to so submit'"; (2) that the question whether a particular claim is arbitrable is one of law for the court to decide; (3) that when deciding whether the parties have agreed to submit a particular claim to arbitration, a court may not rule on the potential merits of the underlying claim; and (4) that when a "contract contains an arbitration provision, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"" [*Academy of Med. of Cincinnati v. Aetna Health, Inc.*], 155 Ohio App.3d 310, 2003-Ohio-6194, 800 N.E.2d 1185, ¶ 12, quoting *Cohen v. PaineWebber, Inc.*, 1st Dist. Hamilton No. C-010312, 2002-Ohio-196, quoting *Council of Smaller Enters.*, 80 Ohio St.3d at 665-666, 687 N.E.2d 1352, quoting *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

*Academy of Med.* at ¶ 5.

**{¶ 27}** Dacres argues the arbitration agreement is not enforceable because he signed the arbitration agreement under economic duress and that the arbitration agreement is procedurally and substantively unconscionable.

### 1. Duress

**{¶ 28}** It is axiomatic that arbitration is a matter of contract and requires a "voluntary offer, acceptance of the offer, and consideration." (Citations omitted.) *Robinson v. Mayfield Auto Group, L.L.C.*, 2017-Ohio-8739, 100 N.E.3d 978, ¶ 13 (8th Dist.). The presence of duress renders the act involuntary. *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 245, 551 N.E.2d 1249 (1990).

{¶ 29} The trial court relied on *Blodgett* to find that Dacres failed to demonstrate duress:

> "A person who claims to have been a victim of economic duress must show that he or she was subjected to * * * a wrongful or unlawful act or threat, * * * and that it * * * deprive[d] the victim of his unfettered will. Further, * * * merely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion * * * three elements are common to all situations where duress has been found to exist. These are: (1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party. * * * The assertion of duress must be proven to have been the result of the defendant's conduct and not by the plaintiff's necessities."

Journal entry order and opinion (Aug. 9, 2018), p. 2, quoting *Blodgett* at 246 (internal citations and quotations omitted.)

{¶ 30} Dacres provided an affidavit in support of his objections to KIA's motion to stay filed in the trial court. Dacres alleged that in November 2016, Office Manager Paula Richter ("Richter") informed employees that they would be required to sign the agreement for arbitration. Dacres asked Richter for a copy of the arbitration agreement to have it reviewed by an attorney but did not receive one.

{¶ 31} On November 28, 2016, at approximately 8:00 p.m., Richter reportedly appeared at Dacres's desk and instructed him to sign the arbitration agreement. Dacres said he reminded Richter of his request for a copy of the arbitration agreement for attorney review, but Richter told him that he would not receive a copy for review, his signature was mandatory, and that if he did not sign the arbitration agreement at that time, he would not receive payment for wages

earned and owed. Dacres's pay was to be electronically deposited into his account on Thursday of that week. Because Richter "repeatedly stated" that he had to sign the arbitration agreement to receive his earned pay, Dacres signed the arbitration agreement.

{¶ 32} Dacres stated that the first opportunity that he had to review the arbitration agreement was two weeks later when he was provided with an unsigned copy by Richter. The first time that Dacres saw an executed and dated copy of the arbitration agreement was after the instant lawsuit ensued. The signature of Stephen Shane ("Shane"), the chief operating officer for KIA, is dated November 28, 2016. Dacres averred that Shane's signature was not on the document at the time that Dacres signed it and Shane was not at the office when the arbitration agreement was signed. The remainder of the affidavit addresses the ongoing discrimination issues that Dacres encountered at KIA.

{¶ 33} KIA offered the affidavits of Shane and Richter in support of the request for a stay. According to the argument and affidavits, Richter is a petite 69-year-old woman who did not "tower over" and physically intimidate Dacres. Richter's time sheet indicated that her workday ended at 5:00 p.m. on November 28, 2016. According to Shane, the chief operating officer of Setjo, L.L.C., which operates KIA, all KIA employees received a copy of a new employee handbook and the arbitration agreement in November 2016. Shane attached an acknowledgement form signed by Dacres on November 28, 2016, the date the arbitration agreement

was signed, that he received a copy of the employee handbook, but the form does not mention the arbitration agreement.

{¶ 34} KIA counters that the three elements of coercion are absent: (1) involuntary acceptance; (2) no alternative under the circumstances; (3) the coercion was caused by KIA. *Blodgett*, 49 Ohio St.3d 243, 246, 551 N.E.2d 1249, citing *Urban Plumbing & Heating Co. v. United States*, 187 Ct.Cl. 15, 28-29, 408 F.2d 382 (1969), citing *Fruhauf Southwest Garment Co. v. United States*, 126 Ct.Cl. 51, 62, 111 F.Supp. 945 (1953). KIA asserts that Dacres "presented no evidence that the financial consequences of the potential withholding [of] a single paycheck were so extreme that he had no alternative but to involuntarily sign" the arbitration agreement.

{¶ 35} KIA states that it is "demonstrably false" that Dacres was forced to sign the arbitration agreement under threat of withholding earned wages and that, even if true, withholding earned pay did not constitute duress. In addition, KIA points out that Dacres continued to work at KIA after executing the arbitration agreement until his termination less than one year afterward.

{¶ 36} KIA correctly states that Ohio employers may condition employment on the agreement of an employee to arbitrate disputes. *Butcher v. Bally Total Fitness Corp.*, 8th Dist. Cuyahoga No. 81593, 2003-Ohio-1734 and *Jones v. U-Haul Co. of Massachusetts & Ohio*, 16 F. Supp.3d 922 (S.D. Ohio 2014).

{¶ 37} "The 'mutuality of obligation' doctrine requires only a quid pro quo for consideration." *Robinson v. Mayfield Auto Group, L.L.C.,* 2017-Ohio-8739, 100

N.E.3d 978, ¶ 13 (8th Dist.), quoting *Frick v. Univ. Hosps. of Cleveland*, 133 Ohio App.3d 224, 228, 727 N.E.2d 600 (8th Dist.1999). "Generally, the court does not inquire into the adequacy of consideration to support the contract." *Butcher* at ¶ 31.

{¶ 38} Immediately above the signature lines, the arbitration agreement contains a statement in bold language that states the signor understands that he or she is giving up the right to a jury trial. It also states, "I understand that I should consult a lawyer of my choice before signing this agreement." Dacres's signature appears underneath the bold language.

> "The parties to an agreement should be able to rely on the fact that affixing a signature which acknowledges one has read, understood, and agrees to be bound by the terms of an agreement means what it purports to mean.

*Id.* at ¶ 35.

{¶ 39} Like the employees in *Butcher* and *Jones,* Dacres was an at-will employee. Dacres has provided no evidence, other than his own affidavit, supporting his claims of duress or rebutting the evidence provided by KIA. As for the presence of economic duress, Ohio has determined that

> [A] person who claims to have been a victim of economic duress must show that he or she was subjected to "* * * a wrongful or unlawful act or threat, * * *" and that it "* * * deprive[d] the victim of his unfettered will." 13 *Williston on Contracts* (3 Ed. 1970) 704, Section 1617. Further, "* * * [m]erely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion." *Id.* at 708.

*Blodgett v. Blodgett*, 49 Ohio St.3d 243, 246, 551 N.E.2d 1249 (1990).

{¶ 40} We affirm the trial court's judgment on the issue of duress.

## 2. Procedural and Substantive Unconscionability

{¶ 41} Unconscionability embodies two separate concepts: (1) unfair and unreasonable contract terms, i.e., substantive unconscionability; and (2) an absence of meaningful choice on the part of one of the parties, i.e., procedural unconscionability. *Taylor Bldg.*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 34. A party asserting the unconscionability of a contract must prove a quantum of both substantive and procedural unconscionability. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 30; *Taylor Bldg.* at ¶ 34. These two concepts create a two-prong conjunctive test for unconscionability. *Gates v. Ohio Sav. Assn*, 11th Dist. Geauga No. 2009-G-2881, 2009-Ohio-6230, ¶ 47; *Strack v. Pelton*, 70 Ohio St.3d 172, 637 N.E.2d 914 (1994).

{¶ 42} "Procedural unconscionability concerns the formation of the agreement and occurs when no voluntary meeting of the minds is possible." *Bayes v. Merle's Metro Builders/Blvd. Constr.*, 11th Dist. Lake No. 2007-L-067, 2007-Ohio-7125, ¶ 11.

> Procedural unconscionability considers the circumstances surrounding the contracting parties' bargaining, such as the parties' "'age, education, intelligence, business acumen and experience, * * * who drafted the contract, * * * whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question.'" [*Collins v.*] *Click Camera* [*& Video*], 86 Ohio App.3d at 834, 621 N.E.2d 1294 [(2d Dist.1993)]. "Factors which may contribute to a finding of unconscionability in the bargaining process [i.e., procedural unconscionability] include the following: belief by the stronger party that there is no reasonable probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by

reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors." Restatement of the Law 2d, Contracts (1981), Section 208, Comment d.

*Taylor Bldg.*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 44.

{¶ 43} "[A] determination of unconscionability is a fact-sensitive question that requires a case-by-case review of the surrounding circumstances." *Brunke v. Ohio State Home Servs., Inc.*, 9th Dist. Lorain No. 08CA009320, 2008-Ohio-5394, ¶ 8. *Wallace v. Ganley Auto Group*, 8th Dist. Cuyahoga No. 95081, 2011-Ohio-2909, ¶ 44.

{¶ 44} Dacres argues that signing the Agreement under duress constitutes procedural unconscionability that would satisfy the first prong of the test. However, Ohio case law requires the presence of both procedural and substantive unconscionability.

> "The party asserting unconscionability of a contract bears the burden of proving that the agreement is *both procedurally and substantively unconscionable*." (Emphasis added.) *Taylor Bldg.*, [117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12], at ¶ 34, citing *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (2d Dist.1993). ("One must allege and prove a 'quantum' of both prongs in order to establish that a particular contract is unconscionable.").

*McGlumphy v. Richard T. Kiko Agency, Inc.*, 9th Dist. Summit No. 27043, 2014-Ohio-3479, ¶ 10.

{¶ 45} Based on our finding that duress is lacking in this case, the procedural prong of the test has not been met and Dacres's unconscionability argument fails. Therefore, we find that the trial court did not abuse its discretion by staying the proceedings pending arbitration.

**{¶ 46}** The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

ANITA LASTER MAYS, JUDGE

EILEEN T. GALLAGHER, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR