[Cite as *Thomas v. Hyundai*, 2020-Ohio-3030.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

SHANNON THOMAS, :

    Plaintiff-Appellant, :

                              No. 108212

v. :

HYUNDAI OF BEDFORD, ET AL.:

    Defendants-Appellees. :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 21, 2020

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-903250

---

### *Appearances:*

Friedman & Associates, and Avery Friedman; Klebanow
Law, L.L.C., and Jared S. Klebanow, *for appellant.*

Zashin & Rich Co., L.P.A., Stephen S. Zashin, and David P.
Frantz, *for appellees.*

ON RECONSIDERATION[1]

---

[1] The original decision in this appeal, *Thomas v. Hyundai of Bedford*, 8th Dist. Cuyahoga No. 108212, 2020-Ohio-185, released on January 23, 2020, is hereby vacated. This opinion, issued upon reconsideration, is the court's journalized decision in this appeal. *See* App.R. 22(C); *see also* S.Ct.Prac.R. 7.01.

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Plaintiff-appellant, Shannon Thomas ("Thomas"), appeals from the trial court's judgment that granted the motion of defendants-appellees, Migdal 1, L.L.C., d.b.a. Hyundai of Bedford, Joe Delguidice, and Kyle Pisani ("appellees"), to stay proceedings pending arbitration. We affirm.

## I.  Background

{¶ 2} On December 15, 2017, Thomas signed an arbitration agreement with his then-employer, Migdal 1, L.L.C. The arbitration agreement provided that

> [a]s the exclusive means of initiating adversarial proceedings to resolve any Covered Dispute, and pursuant to the Federal Arbitration Act (9 U.S.C. §1, either Migdal or Employee may demand that the dispute be resolved by final and binding arbitration using the procedures described in this Agreement, and each party hereby consents to all Covered Disputes being so resolved.

{¶ 3} The agreement defined "Covered Disputes" as

> any actual or alleged claim or liability, regardless of its nature, that Migdal or its owners, managers, members, officers, employees, agents, or insurers may wish to bring against Employee, or that Employee may wish to bring against Migdal or any of Migdal's owners, managers, members, officers, employees, agents, or insurers.

The agreement excluded from consideration as a "Covered Dispute" any claim by an employee for unemployment compensation or workers' compensation benefits, any claim relating to a violation of the National Labor Relations Act, or any other claim that under law cannot be the subject of a pre-dispute arbitration agreement.

{¶ 4} The agreement provided that in any arbitration conducted pursuant to the agreement, either Migdal or the employee "may seek and recover any amount

or type of damages or other legal or equitable relief that could have been recovered had the action been brought in a court."  The agreement further provided that the arbitrator's award would be "final and binding forever" on both the employee and Migdal, and neither Migdal nor the employee could appeal the arbitrator's decision.

{¶ 5}  In September 2018, Thomas filed a two-count complaint against Migdal, Pisani, and Delguidice.  Thomas's complaint asserted claims for race discrimination (Count 1) and retaliation (Count 2) under Ohio Revised Code Chapter 4112.  Count 1 alleged that Thomas was discriminated against on the basis of his race while he was employed by Migdal,[2] and Count 2 alleged that Migdal, Pisani, and Delguidice retaliated against Thomas by demoting him and not paying him in the same manner as white employees when he complained about the discrimination.

{¶ 6}  Appellees answered the complaint and then filed a motion to stay proceedings pending arbitration and for costs and sanctions.  Thomas filed a brief opposing the motion.  The trial court subsequently granted the motion to stay proceedings pending arbitration and denied the motion for costs and sanctions. This appeal followed.

---

[2] Thomas, an African-American male, alleged in his complaint that employees regularly used the "N-word" around him; one employee used a water balloon to act as if he were spraying urine on Thomas; Thomas was paid half the pay of white managers; Thomas's pay was reduced even though white managers' pay remained the same; white managers were allowed to take a car from the lot home at night but Thomas was not afforded the same privilege; white employees were paid a revenue bonus but Thomas was not; management took no action when an employee told Thomas "I don't fight n---ers, I kill them"; and management did not discipline the same employee when he brought a gun to work and was overheard threatening to shoot Thomas.

## II. Law and Analysis

{¶ 7} In his sole assignment of error, Thomas contends that the trial court erred in granting appellees' motion to stay proceedings pending arbitration. He asserts that he cannot be compelled to arbitrate his discrimination and retaliation claims because Ohio's public policy commitment to challenging racial bias in the workplace, as codified in R.C. Chapter 4112, "is so strong * * * that it permits direct access to the courts without any administrative prerequisite." (Appellant's Brief, p. 10). He further contends that the arbitration agreement cannot be enforced because it is unconscionable.

{¶ 8} This court reviews a trial court's decision to grant a motion to stay litigation pending arbitration for an abuse of discretion. *Avery v. Acad. Invest., L.L.C.*, 8th Dist. Cuyahoga No. 107550, 2019-Ohio-3509, ¶ 9.

{¶ 9} Ohio courts recognize a presumption favoring arbitration that arises when the claim in dispute falls within the scope of the arbitration provision. *Wallace v. Ganley Auto Group*, 8th Dist. Cuyahoga No. 95081, 2011-Ohio-2909, ¶ 13. Indeed, Ohio law requires a stay of proceedings when an arbitrable dispute has been improperly brought before a court. *See, e.g., McGuffey v. LensCrafters, Inc.*, 141 Ohio App.3d 44, 50, 749 N.E.2d 825 (12th Dist.2001) (noting that a trial court "shall" stay proceedings pending arbitration once it is satisfied that an issue is arbitrable); *Sasaki v. McKinnon*, 124 Ohio App.3d 613, 618, 707 N.E.2d 9 (8th Dist.1997) ("The Ohio Arbitration Act, which strongly favors arbitration, compels the court to review the arbitration clause at issue and, if the court is satisfied that

the dispute or claim is covered by the arbitration clause, give effect to the clause and stay the proceedings pursuant to R.C. 2711.02."). In light of this strong presumption favoring arbitration, any doubts regarding arbitration should be resolved in its favor. *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶ 18.

{¶ 10} Despite this strong policy favoring arbitration, Thomas contends that he should not be compelled to arbitrate his race discrimination and retaliation claims. As support for his argument, Thomas first directs us to Justice Ruth Bader Ginsburg's dissent in *Epic Sys. Corp. v. Lewis*, 584 U.S. __, 138 S.Ct. 1612, 200 L.Ed.2d 889 (2018), wherein Justice Ginsburg stated:

> It would be grossly exorbitant to read the FAA [Federal Arbitration Act] to devastate Title VII of the Civil Rights Act of 1964 * * * and other laws enacted to eliminate, root and branch, class-based employment discrimination * * *. With fidelity to the Legislature's will, the Court could hardly hold otherwise.

*Id.* at 1648. Thomas suggests that this statement by Justice Ginsburg stands for the proposition that after *Epic Sys.*, individual, non-class action claims brought pursuant to R.C. Chapter 4112 are not arbitrable.

{¶ 11} We fail to see any connection between *Epic Systems* and this case. The issue decided in *Epic Systems* was whether the Federal Arbitration Act permits employers to include class-action waivers in arbitration agreements with their employees, even though the National Labor Relations Act allows employees to engage in "concerted activities" for their "mutual aid and protection." *Id.* at 1633. The majority held that class-action waivers in arbitration agreements are

enforceable; Justice Ginsburg would have answered the question with a "resounding no." *Id.* As aptly stated in Thomas's brief, "*Epic Systems* had nothing to do with individual, non-class action cases like Shannon Thomas's case." (Appellant's Brief, p. 9).

{¶ 12} The excerpt Thomas quotes from Justice Ginsburg's dissent does not support his argument that after *Epic Systems*, non-class action discrimination claims are immune from arbitration. To the contrary, reading the paragraph as a whole, it explains Justice Ginsburg's belief that the majority's holding in *Epic Systems* does not threaten an individual litigant's ability to pursue disparate impact or pattern-or-practice claims, even though such claims may require proof on a group-wide basis.

{¶ 13} We also find no merit to Thomas's assertion that this is a case of "first impression" after *Epic Systems* involving non-class action claims for workplace discrimination subject to an arbitration agreement. In *Jones v. Carrols, L.L.C.*, 9th Dist. Summit No. 28918, 2019-Ohio-211, Jones argued that the arbitration agreement he had signed requiring him to arbitrate claims against his employer was against public policy because it contained a class-action waiver. The Ninth District disagreed, noting that in *Epic Systems*, the Supreme Court held that arbitration agreements requiring individualized arbitration instead of class or collective proceedings did not violate the National Labor Relations Act, and that the Federal Arbitration Act required enforcement of the agreements. *Id.* at ¶ 27, citing *Epic Systems*, ___ U.S. ___, 138 S.Ct. at 1616, 200 L.Ed.2d 889. Notably, as relevant to

Thomas's argument, the Ninth District also rejected Jones's other arguments regarding the enforceability of the arbitration agreement, and held, even after *Epic Systems*, that Jones's individual, non-class action claims for, among other things, race and age discrimination, were subject to arbitration under the arbitration agreement. *Id.* at ¶ 47.

{¶ 14} Thomas next contends the trial court erred in staying proceedings pending arbitration because there is "Ohio precedent which affords Ohio workers the choice to go to arbitration or to the court of common pleas under O.R.C. Section 4112." (Appellant's Brief, p. 9.) But Thomas's citations to *Thomas v. GE Co.*, 131 Ohio App.3d 825, 723 N.E.2d 1139 (1st Dist.1999), and *Luginbihl v. Milcor L.P.*, 3d Dist. Allen No. 1-01-162, 2002-Ohio-2188, as support for this argument are not on point. Both *Thomas* and *Luginbihl* stand for the proposition that a union cannot, in a collective bargaining agreement, prospectively waive a member's right to select a judicial forum for the resolution of the member's statutory claims, even if the collective bargaining agreement contains a grievance procedure that culminates in binding arbitration. *Thomas* at 831; *Luginbihl* at ¶ 28. That is so because statutory discrimination rights are distinct from contractual collective bargaining rights and are independent of the arbitration process. *Haynes v. Ohio Turnpike Comm.*, 177 Ohio App.3d 1, 2008-Ohio-133, 893 N.E.2d 850, ¶ 17-18 (8th Dist.); *Luginbihl* at ¶ 29. Thus, the employee is not required to proceed to arbitration under the collective bargaining agreement and may proceed in state court with his or her discrimination and retaliation claims. *Thomas* at 831.

{¶ 15} This case does not involve a collective bargaining agreement, however, or a union acting on Thomas's behalf. Instead, it involves an arbitration agreement that Thomas signed on his own behalf in which he agreed to submit his claims to arbitration. Despite Thomas's failure to so acknowledge, there are numerous cases from Ohio courts holding that an employee's race discrimination and retaliation claims brought pursuant to R.C. Chapter 4112 are arbitrable where the employee has signed an arbitration agreement. *See, e.g., Doe v. Contemporary Servs. Corp.*, 8th Dist. Cuyahoga No. 107229, 2019-Ohio-635; *Jones,* 9th Dist. Summit No. 28918, 2019-Ohio-211; *Wolfe v. J.C. Penney Corp.*, 10th Dist. Franklin No. 18AP-70, 2018-Ohio-3881; *Hay v. Summit Funding, Inc.*, 4th Dist. Ross No. 16CA3577, 2017-Ohio-8261; *Rivera v. Rent A Ctr., Inc.*, 8th Dist. Cuyahoga No. 101959, 2015-Ohio-3765; *Melia v. OfficeMax N. Am., Inc.*, 8th Dist. Cuyahoga No. 87249, 2006-Ohio-4765; *Butcher v. Bally Total Fitness Corp.,* 8th Dist. Cuyahoga No. 81593, 2003-Ohio-1734.

{¶ 16} In short, Thomas's argument that his race discrimination and retaliation claims are not arbitrable is without merit. Thomas correctly asserts that Ohio has a strong public policy against workplace discrimination. However, consistent with the case law cited above and Ohio's public policy in favor of arbitration, it is apparent that claims asserting workplace discrimination and retaliation, such as Thomas's, are subject to arbitration when the claims fall with the scope of the arbitration agreement, which they do here.

{¶ 17} The dissent, relying on this court's decision in *Arnold v. Burger King*, 8th Dist. Cuyahoga No. 101465, 2015-Ohio-4485, finds that the arbitration agreement is not enforceable because Thomas's claims "are outside the scope of the arbitration agreement," and arbitration of his claims would be against public policy.

{¶ 18} In *Arnold*, an employee asserted claims against her employer and her supervisor for sexual harassment, negligent retention, emotional distress, assault, intentional tort, and discrimination, all of which arose out of a workplace rape by the supervisor. *Id.* at ¶ 5. The defendants moved to compel arbitration, which the trial court denied. *Id.* at ¶ 8. This court affirmed on appeal, finding that the plaintiff's claims were outside the scope of the arbitration agreement and, for many reasons, the agreement was also procedurally and substantively unconscionable. *Id.* at ¶ 35, 74-77, and 85-103.

{¶ 19} *Arnold* is distinguishable from this case, however. The *Arnold* court began its analysis regarding the scope of the arbitration agreement by noting that "principles of equity require that greater scrutiny be given to arbitration provisions that do not involve parties of equal sophistication and bargaining power." *Id.* at ¶ 25. The *Arnold* court concluded that increased scrutiny of the arbitration agreement in that case was necessary because the plaintiff was an "entry-level employee," as opposed to the corporate defendant, which owned and operated numerous Burger King franchises. *Id.* at ¶ 1. Such a pronounced disparity in bargaining power is not the situation in this case, however. Thomas was the Finance Manager at Migdal; thus, he was a professional with a management position who,

unlike an entry-level employee, may be assumed to well understand the implications of signing an arbitration agreement.

{¶ 20} Continuing its analysis, the *Arnold* court found that in determining whether a cause of action is within the scope of an arbitration agreement, the Ohio Supreme Court has adopted the method articulated in *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Cir.2003). *Arnold* at ¶ 30. "A proper method of analysis is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Fazio* at ¶ 395. Nevertheless, "even real torts can be covered by arbitration clauses '[i]f the allegations underlying the claims "touch matters" covered by the [agreement].'" (Brackets sic.) *Id.*, quoting *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir.1987).

{¶ 21} Thus, we must examine the factual allegations of Thomas's complaint, instead of just the causes of action, to determine whether his claims may be independently maintained without reference to the employment relationship. We conclude they cannot because, in fact, they arise directly out of that relationship. Thomas brings his claims pursuant to R.C. 4112.02, which prohibits discriminatory *employment* practices. Thus, Thomas's employment with Migdal is the predicate upon which his claims are based; they cannot arise under R.C. 4112.02 absent his employment by Migdal and therefore, cannot be maintained without reference to the employment relationship. It is simply not true, as posited by the dissent, that "any individual" could assert the same claims against Migdal based upon the same

facts because the claims are dependent upon that individual being employed by Migdal.

{¶ 22} Furthermore, this case is factually distinguishable from *Arnold*. The factual allegations of the complaint are unsupported by any police report or criminal investigation and rest entirely upon the assertions of the plaintiff. Moreover, the facts supporting the *Arnold* court's conclusion that the plaintiff's claims were outside the scope of the arbitration agreement because they were not a foreseeable result of her employment with Burger King are not present in this case. In *Arnold*, the court concluded that it was not "reasonably foreseeable that the arbitration contract encompassed the conduct in question" because (1) the plaintiff was not a professional whose education, experience, and marketability gave her an option to seek employment elsewhere instead of accepting employment that required arbitration; (2) the employer "possessed unique and superior knowledge of the employment environment when the [employment agreement] was executed," including a class-action suit for hostile work environment and sexual harassment against the employer that had been ongoing for over ten years when the plaintiff was raped; and (3) the arbitration agreement was ambiguous. *Arnold*, 8th Dist. Cuyahoga No. 10145, 2015-Ohio-4485 at ¶ 45-47, and 57.

{¶ 23} None of those factors apply here. As discussed earlier, Thomas was an educated professional who understood the ramifications of signing an arbitration agreement and who could have sought employment elsewhere if he did not wish to sign the agreement. Furthermore, there is nothing in the record indicating that

Migdal had unique knowledge of a racist work environment at Hyundai of Bedford. In fact, although the dissent concludes that Thomas had worked at Hyundai for seven months before signing the arbitration agreement, at oral argument, defense counsel asserted, and counsel for Thomas did not dispute, that Thomas worked at Hyundai for some months, left, and then signed the arbitration agreement when he was rehired. Thus, Thomas would have been very aware of the work environment at Hyundai when he signed the agreement. Finally, the agreement is not ambiguous; it specifically defines "Covered Disputes" such that a signatory to the agreement would easily understand the claims he was agreeing to arbitrate. Accordingly, unlike the dissent, we find *Arnold* distinguishable from this case.

{¶ 24} We next consider whether the agreement is unconscionable so as to prevent its enforcement. Although arbitration is encouraged as a way to settle disputes, an arbitration clause is not enforceable if it is unconscionable. *Felix v. Ganley Chevrolet, Inc.*, 8th Dist. Cuyahoga Nos. 86990 and 86991, 2006-Ohio-4500, ¶ 15. Questions of unconscionability are reviewed under a de novo standard of review. *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 8. Under a de novo standard, we give no deference to the trial court's decision. *Brownlee v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 97707, 2012-Ohio-2212, ¶ 9.

{¶ 25} Unconscionability includes both an absence of meaningful choice on the part of one of the parties to a contract, together with contract terms that are unreasonably favorable to the other party. *Hayes v. Oakridge Homes*, 122 Ohio

St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 20; *Collins v. Click Camera & Video, Inc.*, 86 Ohio App.3d 826, 834, 621 N.E.2d 1294 (2d Dist.1993). It consists of two separate concepts: (1) substantive unconscionability; and (2) procedural unconscionability. *Olah v. Ganley Chevrolet, Inc.*, 8th Dist. Cuyahoga No. 86132, 2006-Ohio-694, ¶ 14.

{¶ 26} Substantive unconscionability goes to the unfairness or unreasonableness of the contractual terms. *Featherstone v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 159 Ohio App.3d 27, 2004-Ohio-5953, 822 N.E.2d 841, ¶ 13 (9th Dist.). When a contractual term is "so one-sided as to oppress or unfairly surprise" a party, the contractual term is said to be substantively unconscionable. *Neubrander v. Dean Witter Reynolds, Inc.,* 81 Ohio App.3d 308, 311-312, 610 N.E.2d 1089 (9th Dist.1992).

{¶ 27} Procedural unconscionability, on the other hand, concerns the formation of the agreement, and occurs when one party has such superior bargaining power that the other party lacks a "meaningful choice" to enter into the contract. *DeVito v. Autos Direct Online, Inc.*, 2015-Ohio-3336, 37 N.E.3d 194, ¶ 19 (8th Dist.), citing *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 33. Courts have also characterized it as a lack of voluntary meeting of the minds due to the circumstances surrounding the execution of the contract. *Collins* at 834. In determining procedural unconscionability, courts should consider factors relating to the bargaining power of each party, "such as age, education, intelligence, business acumen and experience, relative bargaining power,

who drafted the contract, whether the terms were explained to the weaker party, and whether alterations in the printed terms were possible." *Id.* Generally, no one factor alone determines whether a contract is procedurally unconscionable. *Hayes* at ¶ 29. Instead, a court must consider the totality of the circumstances. *Id.* at ¶ 30.

{¶ 28} A finding of unconscionability requires both procedural and substantive unconscionability, although procedural and substantive aspects of unconscionability are often integrally related. *DeVito* at ¶ 20. Most cases of unconscionability involve a combination of procedural and substantive unconscionability, and if more of one is present, then less of the other is required. *Id.* "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required." *Id.*, citing 1 E. Allan Farnsworth, *Farnsworth on Contracts*, § 4.28, at 585 (3d Ed.2004).

{¶ 29} Thomas contends that the arbitration agreement is procedurally unconscionable because he was "forced" to sign the agreement months after he began his employment with Migdal, and that Migdal had him "sign off [his] rights as if there were some bargaining relationship, when there was not." (Appellant's Brief, p. 12.) In short, Thomas contends that he had no "meaningful choice" but to sign the agreement because he could not reasonably be expected to quit his job and find new employment.

{¶ 30} In its reply to Thomas's brief in opposition to Migdal's motion to stay proceedings pending arbitration, Migdal admitted that Thomas's continued employment was conditioned upon his signing the arbitration agreement. (Reply

Brief, p. 7.) Thus we find disingenuous appellees' repeated assertions to this court that Thomas was not forced to sign the agreement because he could have revoked his signature under paragraph 22 of the agreement within seven days of signing.

{¶ 31} Nevertheless, the case law is clear that in an at-will employment situation, Ohio employers may condition employment on the employee's agreement to arbitrate disputes. *Dacres v. Setjo*, 8th Dist. Cuyahoga No. 107638, 2019-Ohio-2914, ¶ 36; *Ignazio v. Clear Channel Broadcasting, Inc.*, 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18 (enforcing arbitration agreement that conditioned continued employment upon signing the agreement); *Overman v. Ganley Ford W., Inc.*, N.D. Ohio No. 1:15 CV 1581, 2015 U.S. Dist. LEXIS 169601, 3-4 (Dec. 17, 2015) (rejecting plaintiff's argument that the arbitration agreement should not be enforced because, among other reasons, "he was forced to sign the Arbitration Agreement to keep his job"). Thus, Thomas's argument that the agreement is procedurally unconscionable because he had no choice but to sign the agreement in order to keep his job is without merit.

{¶ 32} Thomas also contends that the agreement is procedurally unconscionable because he did not have an opportunity to understand its terms before signing it. Thomas's argument is not persuasive. He cites to no evidence to support this assertion, and our review of the agreement reveals that Thomas signed the agreement directly below a paragraph, written in bold lettering and all capital letters, that stated:

> I UNDERSTAND THAT, BY SIGNING THIS AGREEMENT, AND EXCEPT WHERE PROHIBITED BY LAW, I AM GIVING UP

FOREVER MY RIGHT TO HAVE A COURT AND A JURY DECIDE CLAIMS THAT I MIGHT WANT TO BRING AGAINST THE OTHER PARTY, IF THOSE CLAIMS ARE COVERED BY THIS AGREEMENT. I ALSO UNDERSTAND THAT I SHOULD CONSULT A LAWYER OF MY CHOICE BEFORE SIGNING THIS AGREEMENT.

In light of the bolded, all-caps admonition that Thomas should consult a lawyer before signing the agreement, we cannot conclude that Thomas did not have a reasonable opportunity to understand the terms of the arbitration agreement before he signed it.

{¶ 33} Thomas also claims that the agreement is procedurally unconscionable because it provides that the arbitrator's award is final and binding and not subject to appeal. Thomas cites no legal authority for this argument, but claims that the "final and binding" nature of the arbitration award makes the agreement unconscionable because he would have no ability to appeal if he experienced any bias from the arbitrator. Under this logic, however, almost all arbitration agreements would be unconscionable, given the ubiquity of agreements that provide for final and binding arbitration.

{¶ 34} Having determined that Thomas failed to establish the procedural unconscionability of the agreement, we need not examine whether it is substantively unconscionable. *Jones*, 9th Dist. Summit No. 28918, 2019-Ohio-211 at ¶ 21. Accordingly, because Thomas's claims are arbitrable and he failed to demonstrate the agreement was unconscionable, the trial court did not abuse its discretion by

staying the proceedings pending arbitration.[3] Despite the dissent's conclusion that it is against public policy to arbitrate claims such as Thomas's, we note again that Ohio has a strong public policy in favor of arbitration, including arbitration of claims asserting workplace racial discrimination and unlawful retaliatory actions as a result of the plaintiff's complaints about such discrimination.

{¶ 35} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

---

[3] In *Dacres v. Setjo, L.L.C.*, 8th Dist. Cuyahoga No. 107638, 2019-Ohio-2914, a different panel of this court considered the same arbitration agreement as at issue here and rejected plaintiff's claim that it was unconscionable because, as in this case, the plaintiff failed to demonstrate the agreement was procedurally unconscionable. *Id.* at ¶ 45. The *Dacres* court therefore affirmed the trial court's judgment staying proceedings pending arbitration without examining whether the agreement was substantively unconscionable.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
MARY EILEEN KILBANE, P.J., DISSENTS WITH SEPARATE OPINION

MARY EILEEN KILBANE, P.J., DISSENTING:

{¶ 36} I respectfully dissent.  I would reverse the trial court's judgment granting Migdal's motion to stay pending submission of Thomas's claims to arbitration.

{¶ 37} The instant case presents us with a situation where an employee has alleged to have been repeatedly subjected to racial discrimination together with racially motivated death threats in a workplace with a record of racial discrimination.  The majority finds that Thomas's workplace discrimination claims are arbitrable because they fall within the scope of the arbitration agreement and Migdal's arbitration agreement is not unconscionable.  I respectfully disagree.  In light of the egregious circumstances of this case, I would find that Thomas's claims are outside the scope of the arbitration agreement and the enforcement of Migdal's arbitration agreement is against public policy.

{¶ 38} In *Arnold*, this court recognized Ohio's pro-arbitration stance, but also recognized that in order for an arbitration agreement to be enforceable, the agreement must apply to the disputed issue.  *Id.*, 2015-Ohio-4485, 48 N.E.2d 69 at

¶ 27, citing *Academy of Medicine.* The majority finds the *Arnold* case distinguishable. I find *Arnold* instructive.

{¶ 39} *Arnold* is an employment dispute case arising from the alleged rape of Arnold (the plaintiff-employee) by her supervisor while she was cleaning the men's bathroom at a Burger King restaurant. Arnold filed a complaint against Burger King alleging six causes of action: sexual harassment; respondent superior/negligent retention; emotional distress; assault; intentional tort; and employment discrimination. *Id.* at ¶ 5. In response to *Arnold's* complaint, Burger King sought to compel arbitration, citing to the mandatory arbitration agreement Arnold executed as a term of her employment. The trial court denied Burger King's motion. *Id.* at ¶ 6, 8.

{¶ 40} On appeal, this court affirmed the trial court's judgment, finding that Arnold's claims relating to and arising from the sexual assault exist independent of the employment relationship because they can be "'maintained without reference to the contract or relationship at issue.'" *Id.* at ¶ 65, citing *Academy of Medicine.*

{¶ 41} In determining whether a claim is within the scope of the arbitration agreement, the *Arnold* court stated that:

> "[a] proper method of analysis here is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Acad. of Med.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488 at ¶ 35 (adopting *Fazio* protocol for state court arbitrability analysis). *See also Complete Personnel Logistics, Inc. v. Patton*, 8th Dist. Cuyahoga No. 86857, 2006-Ohio-3356, ¶ 15 ("tort claims that may be asserted independently, without reference to the contract, fall outside the scope of the arbitration provision").

The *Academy of Medicine* court elaborated on the propriety of employing the *Fazio* test in light of the presumption of arbitrability in Ohio:

> The *Fazio* test does not act as a detriment to arbitration. It functions as a tool to determine a key question of arbitrability — whether the parties agreed to arbitrate the question at issue. It prevents the absurdity of an arbitration clause barring a party to the agreement from litigating any matter against the other party, regardless of how unrelated to the subject of the agreement. *It allows courts to make determinations of arbitrability based upon the factual allegations in the complaint instead of on the legal theories presented. It also establishes that the existence of a contract between the parties does not mean that every dispute between the parties is arbitrable.*

(Emphasis added.) *Academy of Medicine* at ¶ 29.

*Id.* at ¶ 30-31.

{¶ 42} The *Arnold* court also addressed foreseeability and recognized that if the claims were not an immediately, foreseeable result of the employment, they were not within the scope of the clause. *Id.* at ¶ 45, citing *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1219 (11th Cir.2011). The "'overarching issue is whether the parties agreed to arbitrate the issue.'" *Academy of Medicine*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488 at ¶ 19, quoting *Mitsubishi Motors Corp.*, 473 U.S. at 626, 105 S.Ct. 3346, 87 L.Ed.2d 444. "Was it reasonably foreseeable that the arbitration contract encompassed the conduct in question?" *Arnold* at ¶ 45, citing *Fazio*, 340 F.3d 386 at ¶ 395.

{¶ 43} In applying this analysis to the facts in *Arnold*, the court examined the factual allegations underlying Arnold's claim "to determine whether arbitration of the claims may be independently maintained without reference to the contract or

relationship at issue, bringing them outside of the scope of arbitration." *Id.* at ¶ 62,

citing *Academy of Medicine* at ¶ 35. The *Arnold* court also determined "whether the

acts complained of were a foreseeable result of Arnold's employment." *Id.*, citing

*Doe*, 657 F.3d at 1218-1219. The *Arnold* court stated:

> The complaint states that Arnold was constantly subjected to ongoing verbal and unwanted physical conduct that culminated in rape. On July 21, 2012, Arnold was cleaning the men's restroom when Matthews [Arnold's supervisor] entered, grabbed Arnold by her hair, pushed her against the door and forced her to give him oral sex. She has incurred and believes she will continue to incur treatment for her medical and psychological injuries. The complaint also states that [Burger King] had actual or constructive knowledge of Matthews' tendencies and that he posed a hazard.
>
> The complaint further provides that [Burger King] and supervisor Matthews retaliated or threatened to retaliate against Arnold, including termination, due to her attempt to enforce her rights; that she suffered unrelenting abuse, torment, harassment, threats, and embarrassment; and that she will require medical care and psychiatric counseling. It is also asserted that [Burger King] aided, abetted, incited, compelled, and coerced others to engage in unlawful discriminatory practices and/or interfere with or to obstruct Arnold.
>
> Based on the underlying facts, we find that Arnold's claims relating to and arising from the sexual assault exist independent of the employment relationship as they may be "maintained without reference to the contract or relationship at issue." *Academy of Medicine*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, at ¶ 24; *Fazio*, 340 F.3d 386, at ¶ 395, and *Winters Law Firm. L.L.C. v. Groedel*, 8th Dist. Cuyahoga No. 99922, 2013-Ohio-5260, ¶ 14. Any individual could assert the same causes of action based on the underlying facts.
>
> A patron may, for example based on the asserted facts, pursue an action for sexual harassment per the Ohio Civil Rights Act that prohibits discriminatory practices by a proprietor, employer, keeper, or manager of a place of public accommodation (R.C. 4112.02(G)) that includes a restaurant. R.C. 4112.02(H)(9). In addition, R.C. 4112.02(I) prohibits unlawful discrimination for opposing unlawful discriminatory practices.

The second step of our scope of agreement analysis is to inquire whether the claims are a foreseeable result of the employment. *Doe*, 657 F.3d at 1218-1219. We find that ongoing verbal and physical contact culminating in sexual assault as well as retaliation, harassment, or other detrimental acts against Arnold based on the unlawful conduct is not a foreseeable result of the employment.

*Id.* at ¶ 63-67.

{¶ 44} Similarly, in the instant case, Thomas alleges he was subject to racial slurs and taunting almost immediately after he began working at Migdal. His coworkers allegedly regularly used the "n-word" around him and one coworker allegedly acted as if he was spraying urine on Thomas with a balloon. He further alleges that following the settlement of two racial discrimination cases filed by former African-American employees against Migdal, Migdal required its employees to sign an arbitration agreement forever foregoing their rights in court on a "covered dispute."

{¶ 45} Thomas had been employed for seven months at the time he was required to sign the arbitration agreement. After he signed the arbitration agreement, Thomas alleges that he was subject to the outrageous and life-threatening conduct by his Migdal coworkers. In addition, Migdal management allegedly took no action after Thomas advised them that a coworker told him, "I don't fight n------, I kill them," nor did management discipline the same employee when he allegedly brought a gun to work and was overheard threatening to shoot Thomas. Instead, Thomas alleges he was demoted from finance manager to sales associate after reporting the life-threatening, racist events to Migdal management. As Finance Manager, Thomas alleges his pay was half the pay of his fellow white

managers. Thomas claims white managers were paid a revenue bonus, but Thomas was not, and white managers were allowed to take home a car from the lot, but Thomas was not afforded the same privilege.

{¶ 46} Just as the majority in *Arnold* found, I would find, based on the underlying factual allegations, that Thomas's racial discrimination claim, which encompasses outrageous life-threatening, criminal conduct, exists independent of his employment relationship with Migdal as it can be "'maintained without reference to the contract or relationship at issue.'" *Arnold* at ¶ 65, quoting *Academy of Medicine* at ¶ 24. Indeed, "[a]ny individual could assert the same causes of action based on the underlying facts." *Id.* The outrageous criminal conduct — death threats — alleged by Thomas could be asserted by anyone. Death threats are legally distinct from the contractual relationship between Migdal and Thomas. *Arnold* at ¶ 35, citing *Aiken v. World Fin. Corp.*, 373 S.C. 144, 644 S.E.2d 705 (2007), citing *McMahon v. RMS Electronics, Inc.*, 618 F.Supp. 189, 191 (S.D.N.Y. 1985). Additionally, a patron at the car dealership may, based on the asserted facts, pursue an action for racial discrimination per the Ohio Civil Rights Act that prohibits discriminatory practices by a proprietor, employer, keeper, or manager of a place of public accommodation. R.C. 4112.02(G); R.C. 4112.01(H)(9).

{¶ 47} With regard to foreseeability, I would find that the alleged death threats and racism experienced by Thomas as well as the alleged workplace retaliation is not a foreseeable result of his employment. *Arnold* at ¶ 67.

**{¶ 48}** Moreover, the facts and circumstances of the instant case necessitate a finding that Migdal's broadly drafted arbitration clause is against policy.

> A court may refuse to enforce a contract when it violates public policy. *Marsh v. Lampert*, 129 Ohio App.3d 685, 687, 718 N.E.2d 997 (12th Dist.1998), citing *Garretson v. S.D. Myers, Inc.*, 72 Ohio App.3d 785, 788, 596 N.E.2d 512 (9th Dist.1991). The court in *Eagle*, 157 Ohio App.3d 150, 2004-Ohio-829, 809 N.E.2d 1161, explained:
>
> A refusal to enforce a contract on the grounds of public policy may be distinguished from a finding of unconscionability. Rather than focus on the relationship between the parties and the effect of the agreement upon them, public policy analysis requires the court to consider the impact of such arrangements upon society as a whole.
>
> *Id.* at ¶ 63.
>
> Moreover, a contract injurious to the interests of the state will not be enforced. *King v. King*, 63 Ohio St. 363, 372, 59 N.E. 111 (1900). 17 Ohio Jurisprudence 3d, Contracts, Section 94, at 528 (1980), states:
>
> Public policy is the community common sense and common conscience, extended and applied throughout the state to matters of public morals, health, safety, welfare, and the like. Again, public policy is that principle of law which holds that no one can lawfully do that which has a tendency to be injurious to the public or against the public good. Accordingly, contracts which bring about results which the law seeks to prevent are unenforceable as against public policy. Moreover, actual injury is never required to be shown; it is the tendency to the prejudice of the public's good which vitiates contractual relations. (Footnotes omitted.)

*Hedeen v. Autos Direct Online, Inc.*, 2014-Ohio-4200, 19 N.E.3d 957, ¶ 44-45 (8th Dist.).

**{¶ 49}** It is true that Ohio courts have found that an employee's race discrimination claims brought under R.C. Chapter 4112 are arbitrable where the employee has signed an arbitration agreement. I also recognize that Ohio courts, and indeed this court in *Dacres*, have found Ohio employers may condition

employment on the employee's agreement to arbitrate disputes. This case is different; the facts and circumstances here necessitate a finding that Migdal's arbitration clause is against public policy. Arbitration was never intended to shield such threatening and possibly criminal workplace conduct.

{¶ 50} For these reasons, I would reverse the trial court's ruling granting Migdal's motion to stay pending arbitration.